UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

YI SUN,

                              Plaintiff,

                                                        1:24-cv-0668
v.                                                      (DNH/TWD)

NEW YORK STATE WORKERS' COMPENSATION
BOARD, et al.,

                              Defendants.
_____

APPEARANCES:

YI SUN
Plaintiff, *pro se*
10 East 116th Street
Apt 3A
New York, NY 10029-1061

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

## I.    INTRODUCTION

        The Clerk has sent to the Court for review a complaint submitted by *pro se* plaintiff Yi

Sun ("Plaintiff").  Dkt. No. 1.  Plaintiff has not paid the statutory filing fee for this action and

seeks leave to proceed *in forma pauperis* ("IFP").  Dkt. No. 2.  For the reasons that follow,

Plaintiff's IFP application is granted, and the Court recommends dismissal of the complaint with

leave to amend.

## II.    IFP APPLICATION

        Upon review, Plaintiff's IFP application demonstrates economic need.  Dkt. No. 2.

Therefore, her IFP application is granted.  However, Plaintiff will still be required to pay fees

that she may incur in this action, including copying and/or witness fees.

## III.    BACKGROUND

Plaintiff commenced the instant action utilizing the Court's form complaint pursuant to the American with Disabilities Act, 42 U.S.C. § 12101 *et seq*.  *See* Dkt. No. 1.[1]  The complaint lists six defendants: (1) New York State Workers' Compensation Board ("WCB"); (2) New York State Insurance Fund ("NYSIF"); (3) NCA Comp Inc. ("NCA Comp."); (4) New York State Office of Victim Services ("OVS"); (5) New York City Human Resources Administration or Department of Social Services ("HRA/DSS"); and (6) New York State Office of Temporary and Disability Assistance ("OTDA").  *Id*. at 2.  Plaintiff states her disability is as follows:

> (1) Permanent partial disability in lung with dyspnea and bronchial asthma, patient with poorly control persistent asthma symptoms.
>
> (2) Musculoskeletal health 'persistent backache' and 'stiff neck' (and sore shoulders, joint pain) after spinal cord injury.
>
> (3) As a 'facial disfigurement' and 'internal organ loss function and related disabilities' in the twice work injurys.
>
> (4) Became a 'moving functional limitation' or 'motion and balance impairment' in the last injured at 'hate crime' case during the time of Pandemic (COVID-19).

*Id*.  She indicates, by checking off boxes, that this action involves: the failure to employ; termination of employment; denial of participation in public service or program; failure to make alterations to accommodate disability; retaliation; and "other" specified as "racial discrimination and racial prejudice, etc."  *Id*. at 3.

---

[1]  Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system.  Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

In the facts section of the ADA form complaint, Plaintiff references the "right of life and health" and "the right of personal dignity." *Id.* She further states, "The 'multiple disabilities' person filed a complaint/lawsuit against these agencies on May, accusing it of dereliction of duty etc." *Id.* Reference is also made to a thirty-three-page, typed, singled-spaced document entitled, "VERIFIED COMPLAINT (With Factual Allecations) AND DEMAND FOR A JURY TRIAL, etc." (hereafter "Verified Complaint"). *Id.*; *see* Dkt. No. 1-1. As relief, Plaintiff requests the following:

I.    First of all, Plaintiff seeks an order of 'Summary Judgment' in 'the recommended lifesaving anti-inflammatory drug treatment' so that the 'Multiple Disabilities' person can get the life-saving pharmaceuticals and order the WCB (and NYSIF Insurers) must provide medical treatment expenses and disability benefits for injured worker;

II.   Order the OVS must provide related assistances for the survivor/victim, who is/was a criminal victim of hate crime case (the claim # 81593) and a rape survivor in past. Order the HRA/DSS must provide the basic living needs for the disabled, pursuant to the Federal Regulations/Law or and Rules 'Title II of the Federal Social Security Act' and or and 'Americans with Disabilities Act of 1990.'

III.  Award Yi Sun compensatory damages in an amount to be determined at trial;

IV.   Award Yi Sun punitive and exemplary damages (against Defendants) in an amount to be determined at trial; and such other and further relief as the Court may deem just and power.

Dkt. No. 1 at 4.

The Verified Complaint is confusing and difficult to understand. *See generally* Dkt. No. 1-1.[2] By way of example, Plaintiff states:

This Verified Complaint is the helpless survivor Yi Sun filed a lawsuit again the local government authorities' blatant gave

---

[2] For the sake of brevity and clarity, the Court will not endeavor to summarize each occurrence or condition described in Plaintiff's lengthy and disorganized Verified Complaint.

malfeasance, he/she/they practies favoritism, makes falsification, neglects his/her/their duties, or has any other malfeasance. Include: Serous prejudice and discrimination against the Asian injured worker, "Testing their drugs" on the injured woman with disabilities (who was a vulnerable groups); Arbitrary deprivation of the injured woman's 'Right to Life and Health' through abuse of power shielded by impunity; knowingly encourages someone to suicide.

Plaintiff Yi Sun's disclaimer: this Verified Complaint/Statement is not malicious, is full of my blood and tears of history. "What Yi Sun requires is, that justice be done." I always believe that "In a just society there must be a system whereby people case seek redress through the Courts."

*Id*. at 2. The Verified Complaint references two workers' compensation claims (case number 00319053 and case number 00839618). *Id*. at 3. Plaintiff alleges she is "currently 100% disability" but she "didn't get these disability benefits during the period of disability under the disability clause of 'Workers' Compensation Law' or and 'Americans with Disabilities Act of 1990'" because of "artificial mistakes." *Id*. at 9-10. The WCB ignored Plaintiff's request for "error correction." *Id*. at 10. Plaintiff continues to file motions and contacts the WCB and related offices (by phone, Email, fax, and mailings), but she is ignored. *Id*. at 11-13. Additionally, when Plaintiff calls the defendant insurance companies, NYSIF and NCA Comp Inc., she "got '**Language Discrimination**' by the Insurer staffs." *Id*. at 11 (emphasis in original).

Plaintiff also claims she was assaulted on November 5, 2020, and April 30, 2021 (NYPD complaint report Number: 2021-005-1954 and 2021-025-14540). *Id*. Plaintiff believes the attacks were racially motivated. *Id*. She was further injured and incurred medical bills. *Id*. at 14-16. "The helpless victim is struggling to survive. An employee suffering from work-related injury or occupation disease is entitled to work-related injury medical treatment according to laws and regulations." *Id*. at 13.

"To add insult to injury only a minimal amount of money ($50 in Bounced Check) was offered as compensation in the Matter of 'Hate Crime' by 'New York State Office of Victim Services; And a minimal amount of money ($2.5 only) was offered as Emergency Housing Assistance by the Members of the local HRA-18 (New York City Human Resources Administration or Department of Social Services) in the time of the Pandemic (Covid 19)." *Id*. at 14. "Plaintiff believed that the 'disabled Asian female client Yi Sun' who is essentially disxcriminated against because of racism." *Id*. Plaintiff hopes that the OTDA "can watch on all this and to lend me a hand." *Id*. at 27. Plaintiff further states "if the WCB or OTDA administers a scheme to provide interest-free loans to those who need financial assistance as a result of work-related accident like me, I believe that the 'Multiple Disabilities' (this Asian woman admitted to higher education) will doing very well as a small business investor." *Id*. at 29.

## IV.    LEGAL STANDARD

Section 1915 of Title 28 requires a district court to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal punctuation and citation omitted, emphasis in

original).  A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) ("[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible."); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless . . . or (2) the claim is based on an indisputably meritless legal theory.").

Additionally, when reviewing a complaint, a court may look to the Federal Rules of Civil Procedure.  To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).[3]  This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

---

[3] *See also* Fed. R. Civ. P. 10(b) ("A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.  A later pleading may refer by number to a paragraph in an earlier pleading.  If doing so would promote clarity, each claim founded on a separate transaction or occurrence--and each defense other than a denial--must be stated in a separate count or defense.").

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Generally, before the Court dismisses a *pro se* complaint or any part of the complaint *sua sponte*, the Court should afford the plaintiff the opportunity to amend at least once. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo*, 987 F.2d at 131.

## V.    ANALYSIS

Federal courts exercise limited jurisdiction pursuant to Article III of the Constitution. A court may exert subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States" and civil actions where there is diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000. 28 U.S.C. §§ 1331, 1332. In the absence of a basis for exercising jurisdiction, the case must be dismissed. Fed. R. Civ. P. 12(h)(3); *United States v. Cotton*, 535 U.S. 625, 630 (2002); s*ee also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 n.10 (2006) ("A claim invoking federal-question jurisdiction under 28 U.S.C. § 1331 . . . may be dismissed for want of subject-matter jurisdiction if it is not colorable, i.e., if it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'") (citing *Bell v. Hood*, 327 U.S. 678, 682-83 (1946))

(additional citations omitted).  "[F]ailure of subject matter jurisdiction is not waivable and may

be raised at any time by a party or by the court *sua sponte*."  *Lyndonville Sav. Bank & Trust Co.*

*v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000).

As noted above, it appears Plaintiff seeks to invoke federal question subject matter

jurisdiction given that she utilized a form ADA complaint.  *See* Dkt. No. 1; *see also* Dkt. No. 1-1

at 1 ("This is a civil acting seeking Judgment, relief and/or damages brought pursuant to the

Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., as amended, for discrimination

based upon a disability and the failure to accommodate same.").

The ADA "forbids discrimination against persons with disabilities in three major areas of

public life[.]"  *Tennessee v. Lane*, 541 U.S. 509, 516 (2004).  The first of the three is

employment; ADA claims arising in the employment context are called "Title I" claims because

they are governed by Title I of the statute.  *See id*.  Title II governs "public services, programs,

and activities," and Title III covers "public accommodations."  *Id*. at 517.

Even afforded a liberal construction, Plaintiff has not pled sufficient facts to support an

ADA claim at this juncture and Plaintiff's complaint fails to meet the pleading requirements set

forth in Rules 8 and 10 of the Federal Rules of Civil Procedure.

As set forth above, Rule 8 requires, *inter alia*, "a short and plain statement of the claim

showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Each statement must

be "simple, concise, and direct," Fed. R. Civ. P. 8(d)(1), and provide "fair notice of the claims

asserted."  *Whitfield v. Johnson*, 763 F. App'x 106, 107 (2d Cir. 2019) (Summary Order) (citing

*Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)).  Rule 8 "demands more than an unadorned,

the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550

U.S. at 555).  "A complaint may be dismissed under Rule 8 if it 'is so confused, ambiguous,

vague, or otherwise unintelligible that its true substance, if any, is well disguised.'" *Id.* (quoting *Simmons*, 49 F.3d at 86 (2d Cir. 1995)).

Moreover, as noted above, Rule 10 provides "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). The Rule's purpose is "to provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Clervrain v. Robbins*, No. 1:22-CV-1248 (MAD/DJS), 2022 WL 17517312, at *2 (N.D.N.Y. Dec. 8, 2022) (citation omitted), *report and recommendation adopted*, 2023 WL 3170384 (N.D.N.Y. May 1, 2023).

A complaint that fails to comply with basic pleading requirements presents too heavy a burden for defendants to craft a defense, "provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims[,]" and may properly be dismissed. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). Such is the case here.

Accordingly, the Court recommends dismissal of the complaint because it is not acceptable under Rules 8 and 10 of the Federal Rules of Civil Procedure and, for the reasons set forth below, fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e).

From what the Court can discern, Plaintiff could not proceed with a claim under Title 1 of the ADA because she has neither alleged that she was employed by any Defendant, nor alleged that she exhausted administrative remedies by filing a charge with the Equal Employment Opportunity Commission before pursuing litigation in federal court. 42 U.S.C. § 12117; *see Mary Jo C. v. New York State Local Retirement Sys.*, 707 F.3d 144, 169 (2d Cir. 2013) (citation omitted); *see also Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 (2001) (holding Title I of the ADA does not abrogate Eleventh Amendment sovereign immunity).

To plead a violation of Title II of the ADA, a plaintiff must allege "(1) that she is a qualified individual with a disability; (2) that she was excluded from participation in a public entity's services, programs, or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to her disability." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (brackets omitted) (quoting *Hargrave v. Vermont*, 340 F.3d 27, 34-35 (2d Cir. 2003)).  The public entities defined in the ADA are state or local governments and their instrumentalities.  42 U.S.C. § 12131(1).

Here, the complaint is devoid of factual allegations plausibly suggesting that Plaintiff was excluded or unable to access programs due to her disability, how her disability prevented her from accessing those programs, or what accommodations she sought and was denied by Defendants.  *See generally* Dkt. Nos. 1, 1-1.  Rather, it appears Plaintiff is unhappy with the results of her workers' compensation claims because she is "100% disabled" and "is struggling to survive."  Dkt. No. 1-1 at 4; *see, e.g.*, *id.* at 10 ("I had to file "Notice of Appeal To the State of New York Supreme Court, Appellate Division, Third Judicial Department From the WCB Decision on NYS Worker's Compensation Board."); *see also Sun v. State Ins. Fund*, 161 N.Y.S.3d 474, 475-76 (N.Y. App. Div. 3d Dep't 2022) (affirming decision of the Workers' Compensation Board, filed August 14, 2020, which, among other things, denied Yi Sun's request to reopen two workers' compensation claims (case number 00319053 and case number 00839618) seeking an increase in her benefits and requesting emergency medical and financial assistance).[4]

---

[4] As summarized by the Appellate Division, "In October 2002, [Yi Sun] established a workers' compensation claim (case number 00319053) for occupational bronchitis causally related to her employment as a jeweler technician.  Ultimately, by decision filed December 20, 2012, claimant was classified with a 40% permanent partial disability and, based upon her average weekly wage, received ongoing benefits at a rate of $78.06 a week.  In 2008, [Yi Sun], who was working as a

To state a claim under Title III of the ADA, a plaintiff "must allege (1) that she is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) that defendants discriminated against her by denying her a full and equal opportunity to enjoy the services defendants provide." *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008). The complaint fails to allege facts plausibly suggesting that Defendants discriminated against Plaintiff by denying her a full and equal opportunity to enjoy the services that any Defendant provides. *See generally* Dkt. Nos. 1, 1-1.

Title IV of the ADA does not appear to be applicable to Plaintiff's claims because Title IV prohibits disability discrimination in telecommunications. *Genco v. Sargent & Collins LLP*, No. 18-CV-0107, 2018 WL 3827742, at *3 n.5 (W.D.N.Y. June 4, 2018).

Finally, Title V of the ADA, sometimes referred to as the "retaliation provision," also does not appear applicable because Plaintiff does not allege that she engaged in activity protected by the ADA, that Defendants were aware of that activity, or that Defendants took any adverse action against Plaintiff causally related to that protected activity. *Chiesa v. New York State Dep't of Labor*, 638 F. Supp. 2d 316, 323 (N.D.N.Y. 2009); *see also Constantine v. Merola*, No. 20-CV-1012 (DNH/ML), 2020 WL 8450544, at *5 (N.D.N.Y. Nov. 6, 2020) (recommending dismissal of the plaintiff's Title V ADA claims where the complaint failed to allege that the plaintiff "engaged in any protected activity, that any [d]efendant knew that [p]laintiff was involved in the protected activity, or that any adverse decision or course of action taken by

---

hotel housekeeper, established an additional, unrelated workers' compensation claim (case number 00839618) for work-related injuries to her back, right shoulder and right elbow. In a decision filed January 21, 2015, claimant was classified with a permanent partial disability and found to have sustained a 40% loss of wage-earning capacity, entitling her to 275 weeks of indemnity benefits at a rate of $150 a week. Claimant's permanent partial disability benefits were apportioned equally between the two claims." *Sun*, 161 N.Y.S.3d at 475-76.

[d]efendants was causally connected to that protected activity."), *report-recommendation adopted*, 2021 WL 392487 (N.D.N.Y. Feb. 4, 2021).

In sum, while referencing the ADA, it is unclear how it is that Plaintiff alleges these Defendants violated her rights under that statute.  Plaintiff's allegations are conclusory and suggest that Plaintiff is merely dissatisfied with the rulings and/or actions of the WCB and other services provided the Defendants.  Indeed, as relief, *inter alia*, Plaintiff asks the Court to "Order" the WCB to "correct the incorrect information" because "An employee suffering from work-related injury or occupational disease is entitled to work-related injury medical treatment according to laws and regulations."  Dkt. No. 1-1 at 31.  She also asks the Court to "Order the WCB (and NYSIF Insurers) must provide medical treatment expenses and disability benefits for injured worker."  Dkt. No. 1 at 4; *see also* Dkt. No. 1-1 at 31.  Setting aside the foregoing pleading defects, this Court does not have jurisdiction to grant Plaintiff any of the requested relief.[5]  Dkt. No. 1 at 4; Dkt. No. 1-1 at 31-33.  *See generally*, *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (the plaintiff bears the burden of establishing subject matter jurisdiction).

Accordingly, having carefully reviewed Plaintiff's submissions, the Court recommends dismissal of the complaint for failure to state a claim upon which relief may be granted.  *See, e.g.*, *Valdez v. Soc. Sec. Admin.*, No. 8:20-CV-35 (GTS/DJS), 2020 WL 2575892, at *1 (N.D.N.Y. Apr. 23, 2020) (recommending dismissal without prejudice where the ADA form

---

[5]  In addition, Plaintiff's claim may be subject to dismissal based on the *Rooker-Feldman* doctrine, which directs that except for the Supreme Court, federal courts are not authorized to exercise appellate jurisdiction over state-court judgments.  *McKithen v. Brown*, 481 F.3d 89, 96 (2d Cir. 2007).  "The Second Circuit has explicitly applied the *Rooker-Feldman* doctrine to ADA claims."  *Dees v. Zurlo*, No. 1:24-CV-1 (MAD/DJS), 2024 WL 2291701, at *16 (N.D.N.Y. May 21, 2024) (citing *DiLauria v. Town of Harrison*, 64 F. App'x 267, 270 (2d Cir. 2003)).

complaint stated that the plaintiff was not provided reasonable accommodations but was not employed by the defendants and appeared to be seeking judicial review of an administrative decision denying benefits under the Social Security Act), *report and recommendation adopted*, 2020 WL 2574632 (N.D.N.Y. May 21, 2020).

Given that this is the Court's first review of Plaintiff's complaint and she is proceeding *pro se*, out of an abundance of caution, the Court recommends Plaintiff be granted leave to amend the complaint.[6]

## VI.   CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED**, and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITH LEAVE TO AMEND**; and it is further

---

[6] If Plaintiff chooses to file an amended complaint, she should note that the law in this circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'" *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *Pourzandvakil v. Humphry*, No. 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Any such amended complaint must set forth a short and plain statement of the facts on which she relies to support any legal claims asserted and must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. In addition, the amended complaint must include allegations reflecting that a case or controversy exists between the Plaintiff and the Defendants which Plaintiff has a legal right to pursue, and over which this Court has jurisdiction. Finally, Plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted)).

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam) on Plaintiff.

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff has fourteen days within which to file written objections to the foregoing report.[7]  Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

**IT IS SO ORDERED.**

Dated:  November 7, 2024
        Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[7]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

Clervrain v. Robbins, Not Reported in Fed. Supp. (2022)

2022 WL 17517312

2022 WL 17517312
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Manetirony CLERVRAIN, Plaintiff,
v.
Jonathan ROBBINS, et al., Defendants.

1:22-CV-1248 (MAD/DJS)
|
Signed December 8, 2022

**Attorneys and Law Firms**

MANETIRONY CLERVRAIN, Plaintiff, Pro Se, Anderson,
IN 46013.

**REPORT-RECOMMENDATION and ORDER**

DANIEL J. STEWART, United States Magistrate Judge

**\*1** The Clerk has forwarded for review what has been
docketed as a civil complaint filed by Plaintiff. Dkt. No. 1,
Compl. Plaintiff has not paid the filing fee but has submitted
an application to proceed *in forma pauperis* ("IFP"), Dkt. No.
2, which the Court has granted. [1]

[1]    Plaintiff has also moved for leave to file
       electronically. Dkt. No. 3. Given the recommended
       disposition of this case, that Motion is denied with
       leave to renew if Plaintiff files a complaint that
       survives review under section 1915.

**I. SUFFICIENCY OF THE COMPLAINT**

**A. Governing Legal Standard**

28 U.S.C. § 1915(e) directs that, when a plaintiff seeks to
proceed *in forma pauperis*, "(2) ... the court shall dismiss
the case at any time if the court determines that – ... (B)
the action ... (i) is frivolous or malicious; (ii) fails to state a
claim on which relief may be granted; or (iii) seeks monetary
relief against a defendant who is immune from such relief." 28
U.S.C. § 1915(e)(2)(B). [2] Thus, even if a plaintiff meets the
financial criteria to commence an action *in forma pauperis*, it
is the court's responsibility to determine whether the plaintiff

may properly maintain the complaint that he filed in this
District before the court may permit the plaintiff to proceed
with this action *in forma pauperis. See id.*

[2]    To determine whether an action is frivolous, a court
       must look to see whether the complaint "lacks an
       arguable basis either in law or in fact." *Neitzke v.
       Williams*, 490 U.S. 319, 325 (1989).

Likewise, under 28 U.S.C. § 1915A, a court must review
any "complaint in a civil action in which a prisoner seeks
redress from a governmental entity or officer or employee of
a governmental entity" and must "identify cognizable claims
or dismiss the complaint, or any portion of the complaint,
if the complaint ... is frivolous, malicious, or fails to state a
claim upon which relief may be granted; or ... seeks monetary
relief from a defendant who is immune from such relief." 28
U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116
(2d Cir. 1999) (*per curiam*); *Abbas v. Dixon*, 480 F.3d 636,
639 (2d Cir. 2007) (stating that both sections 1915 and 1915A
are available to evaluate *pro se* prisoner complaints).

In reviewing a *pro se* complaint, the court has a duty to show
liberality toward *pro se* litigants, *see Nance v. Kelly*, 912 F.2d
605, 606 (2d Cir. 1990) (*per curiam*), and should exercise
"extreme caution ... in ordering sua sponte dismissal of a
pro se complaint *before* the adverse party has been served
and both parties (but particularly the plaintiff) have had an
opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37,
41 (2d Cir. 1983) (internal citations omitted). Therefore, a
court should not dismiss a complaint if the plaintiff has stated
"enough facts to state a claim to relief that is plausible on its
face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
"A claim has facial plausibility when the plaintiff pleads
factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct
alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing
*Bell Atl. Corp. v. Twombly*, 550 U.S. at 556).

**\*2** Although a court should construe the factual allegations
in the light most favorable to the plaintiff, "the tenet that
a court must accept as true all of the allegations contained
in a complaint is inapplicable to legal conclusions." *Id.*
"Threadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice." *Id.*
(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here
the well-pleaded facts do not permit the court to infer more
than the mere possibility of misconduct, the complaint has
alleged - but it has not show[n] - that the pleader is entitled
to relief." *Id. at 679* (quoting FED. R. CIV. P. 8(a)(2)).

Clervrain v. Robbins, Not Reported in Fed. Supp. (2022)

2022 WL 17517312

Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).

**B. Analysis of the Complaint**

A court's initial review of a complaint under § 1915(e) must encompass the applicable standards of the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain:

> (1) a short and plain statement of the grounds for the court's jurisdiction ...;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

FED. R. CIV. P. 8(a). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Hudson v. Artuz*, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995)). Moreover, Rule 10 of the Federal Rules of Civil Procedure provides, in part:

> **(b)    Paragraphs;    Separate Statements.** A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). The purpose of Rule 10 is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Sandler v. Capanna*, 1992 WL 392597, at *3 (E.D. Pa. Dec. 17, 1992).

A complaint that fails to comply with basic pleading requirements presents too heavy a burden for defendants to craft a defense "and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

Plaintiff's Complaint clearly does not satisfy these requirements. The nature of the Complaint is unclear. The Complaint recites a wide variety of federal statutes and case law, but a thorough review of the main Complaint and the numerous attachments does not provide clarity as to what federal claim Plaintiff seeks to pursue in this Court. It is unclear what relationship the individuals identified by Plaintiff as Defendants have to Plaintiff and how he alleges they violated his rights.

Given its lack of clarity, the Complaint is clearly subject to dismissal. "[A] court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Bruce v. Tompkins Cty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at *4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991)). Accordingly, the Court recommends that the Complaint be dismissed, but that Plaintiff be afforded an opportunity to amend.

 **\*3**  The Court advises Plaintiff that should he be permitted to amend his Complaint, any amended pleading she submits must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Any such amended complaint, **which shall supersede and replace in its entirety the previous Complaint filed by Plaintiff**, must contain **sequentially numbered paragraphs containing only one act of misconduct per paragraph**. Thus, if Plaintiff claims that his civil and/or constitutional rights were violated by more than one defendant, or on more than one occasion, he should include a corresponding number of paragraphs in his amended complaint for each such allegation, with each paragraph specifying (i) the alleged act of misconduct; (ii) the date, including the year, on which such misconduct occurred; (iii) the names of each and every individual who participated in such misconduct; (iv) where appropriate, the

location where the alleged misconduct occurred; and, (v) the nexus between such misconduct and Plaintiff's civil and/or constitutional rights.

Plaintiff is further cautioned that no portion of his prior Complaint shall be incorporated into his amended complaint by reference. Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the defendants and must demonstrate that a case or controversy exists between the Plaintiff and the defendants which Plaintiff has a legal right to pursue and over which this Court has jurisdiction. If Plaintiff is alleging that the named defendant violated a law, he should specifically refer to such law.

## II. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Complaint be **DISMISSED with leave to amend**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) [3] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roland v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

[3]     If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 17517312

---

End of Document                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 3170384

2023 WL 3170384
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Manetirony CLERVRAIN, Plaintiff,

v.

Jonathan ROBBINS, Jean-Max Bellerive,
Josue Pierre-Louis, Garry Conille, Jean-Claude
Theogene, Barthelemy Anteno, Kwasi Amoako-
Attah, and Victor (Ito) Bisono Haza, Defendants.

1:22-CV-1248 (MAD/DJS)
|
Signed May 1, 2023

**Attorneys and Law Firms**

MANETIRONY CLERVRAIN, 4326 South Scatterfield
Road, Suite 153, Anderson, Indiana 46013, Plaintiff, Pro Se.

# ORDER

Mae A. D'Agostino, United States District Judge:

*1 On November 22, 2022, *pro se* Plaintiff Manetirony
Clervrain ("Plaintiff") filed a complaint against Defendants
consisting of 70 pages of forms and documents, *see* Dkt.
No. 1, "recit[ing] a wide variety of federal statutes and case law,"
Dkt. No. 7 at 5, and around two hundred pages of attachments.
*See* Dkt. Nos. 1-1, 1-5, 1-6. On the same day, Plaintiff moved
for leave to proceed *in forma pauperis* ("IFP"), *see* Dkt. No.
2, and to obtain an ECF login and password. *See* Dkt. No. 3.

On December 8, 2022, Magistrate Judge Daniel J. Stewart
granted Plaintiff's motion to proceed IFP. *See* Dkt.
No. 6. Additionally, Magistrate Judge Stewart issued a
Report-Recommendation and Order recommending that the
complaint be dismissed with leave to amend. *See* Dkt.
No. 7. Plaintiff has not filed an objection to the Report-
Recommendation and Order.

When a party declines to file objections to a magistrate judge's
report-recommendation or files "[g]eneral or conclusory
objections or objections which merely recite the same
arguments [presented] to the magistrate judge," the district
court reviews those recommendations for clear error. *O'Diah
v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y.
Mar. 16, 2011)* (citations and footnote omitted); *see also*

*McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y.
2007). After the appropriate review, "the court may accept,
reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate judge." 28 U.S.C.
§ 636(b)(1).

"[I]n a *pro se* case, the court must view the submissions
by a more lenient standard than that accorded to 'formal
pleadings drafted by lawyers.' " *Govan v. Campbell*, 289
F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v.
Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted).
The Second Circuit has held that the court is obligated to
" 'make reasonable allowances to protect *pro se* litigants' "
from inadvertently forfeiting legal rights merely because they
lack a legal education. *Govan*, 289 F. Supp. 2d at 295 (quoting
*Taguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

Having reviewed the December 8, 2022 Report-
Recommendation and Order, Plaintiff's complaint and the
applicable law, the Court finds that Magistrate Judge Stewart
correctly determined that the complaint should be dismissed.
The complaint is largely incomprehensible and suffers from
several deficiencies. Rule 8(a) of the Federal Rules of Civil
Procedure provides that a pleading must contain "a short
and plain statement of the claim showing that the pleader is
entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff's complaint
is neither short nor plain. *See* Dkt. No. 1. As currently
drafted, and even with the leniency given to a *pro se* litigant's
pleadings, Plaintiff failed to meet pleading standards such
that the Court is unable to meaningfully analyze whether
Plaintiff can allege any colorable claim against Defendants.
*See Canning v. Hofmann*, No. 1:15-CV-0493, 2015 WL
6690170, *5 (N.D.N.Y. Nov. 2, 2015)* ("[H]aving found
that none of the allegations in Plaintiff's meandering and
indecipherable Complaint raise a cognizable cause of action,
the Court concludes that the Complaint fails to state a claim
upon which relief may be granted and is subject to dismissal")
(citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

*2 Finally, the Court agrees with Magistrate Judge Stewart
that Plaintiff should be granted an opportunity to amend
out of deference to Plaintiff's *pro se* status. *See Nielsen
v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (" 'Generally,
leave to amend should be freely given, and a *pro se*
litigant in particular should be afforded every reasonable
opportunity to demonstrate that he has a valid claim' ")
(quotation omitted). Should Plaintiff choose to amend the
complaint, the Court urges Plaintiff to review Magistrate

Judge Stewart's suggestions in the Report-Recommendation and Order thoroughly. *See* Dkt. No. 7 at 4-6.

Accordingly, the Court hereby

**ORDERS** that the Report-Recommendation and Order (Dkt. No. 7) is **ADOPTED in its entirety**; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED with leave to amend**; and the Court further

**ORDERS** that Plaintiff shall file his amended complaint within **thirty (30) days** of the date of this Order; and the Court further

**ORDERS** that, if Plaintiff fails to file an amended complaint within thirty (30) days of the date of this Order, the Clerk of the Court shall enter judgment in Defendants' favor and close this case without further order from this Court; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 3170384

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Genco v. Sargent & Collins LLP, Not Reported in Fed. Supp. (2018)

2018 WL 3827742

2018 WL 3827742
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Benedict R. GENCO, Plaintiff,

v.

SARGENT & COLLINS LLP, Defendant.

18-CV-0107-LJV-MJR
|
Signed 06/01/2018
|
Filed 06/04/2018

**Attorneys and Law Firms**

Benedict R. Genco, N. Tonwanda, NY, pro se.

Richard G. Collins, Sargent & Collins, LLP, Williamsville, NY, for Defendant.

REPORT AND RECOMMENDATION

HONORABLE MICHAEL J. ROEMER, United States Magistrate Judge

## INTRODUCTION

**\*1**  This case has been referred to the undersigned pursuant to Section 636(b)(1) of Title 28 of the United States Code, by the Honorable Lawrence J. Vilardo, for hearing and reporting on dispositive motions for consideration by the District Court. Before the Court is defendant's motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 3). For the following reasons, it is recommended that defendant's motion to dismiss be granted and the complaint dismissed with prejudice.

## RELEVANT FACTS AND BACKGROUND

Plaintiff Benedict Genco ("plaintiff" or "Genco"), who is proceeding *pro se*, filed the instant complaint against the law firm of Sargent & Collins, LLP ("Sargent & Collins" or "defendant") on January 22, 2018. (Dkt. No. 1). The allegations in plaintiff's complaint are, in large part, difficult to follow or fully understand. In light of plaintiff's *pro se* status, the Court has attempted to discern

the causes of action asserted. Plaintiff's claims appear to be premised upon Sargent & Collins' legal representation of his employer, Starpoint Central School District ("Starpoint"), in or around January of 2017. (*Id.*). Plaintiff contends that, on account of his various disabilities, Starpoint placed him on administrative leave pursuant to Section 72 of the New York State Civil Service Law and forced him to undergo a fitness for duty medical examination. (*Id.*). He claims that by serving as legal counsel to Starpoint during this time, Sargent & Collins also discriminated and retaliated against him on the basis of his disabilities. [1] (*Id.*). Plaintiff alleges that Sargent & Collins contacted the doctor who performed the examination, that they engaged in the "unauthorized disclosure" of his medical records, and that they "assisted" Starpoint in placing him on unpaid leave. (*Id.*). Plaintiff indicates that the nature of his suit against Sargent & Collins is "disability discrimination, retaliation, providing unauthorized medical records and failure to accommodate." Genco's complaint further alleges that: (1) Starpoint failed to accommodate his disability with respect to boiler training; (2) his fitness for duty examination was improper because the doctor who performed the examination was not a physician; [2] and (3) the fitness for duty examination as well as his placement on administrative leave violated the New York State Civil Service Law and the New York State Education Law. (*Id.*).

---

[1]     Genco has filed a separate suit in this Court against Starpoint alleging employment discrimination, retaliation and failure to accommodate in violation of the Americans with Disabilities Act. (*See Genco v. Starpoint Central School District*, Case No. 1:17-CV-01168). Starpoint moved to dismiss plaintiff's *pro se* complaint. Today, the Court issued a Report recommending that Starpoint's motion to dismiss plaintiff's complaint be denied. (Case No. 1:17-CV-01168, Dkt. No. 26). Plaintiff further filed suit, also on a *pro se* basis, against the law firm of Webster Szanyi LLP. (*See Genco v. Webster Szanyi, LLP*, Case No. 1:18-CV-00093). Webster Szanyi, who is representing Starpoint in the course of plaintiff's employment discrimination lawsuit, moved to dismiss the complaint. Today, this Court issued a Report recommending that the complaint against Webster Szanyi be dismissed with prejudice. (*Id.* at Dkt. No. 18). It is also noted that plaintiff filed a previous employment discrimination lawsuit against Starpoint, in this

Genco v. Sargent & Collins LLP, Not Reported in Fed. Supp. (2018)

2018 WL 3827742

Court, in March of 2013. In February of 2015, the Honorable William M. Skretny granted summary judgment in favor of Starpoint. *See Genco v. Starpoint Central School District*, 1:13-CV-301, 2015 WL 540217 (WDNY Feb. 10, 2015).

[2]    The complaint states that Michael P. Santa Maria, Ph.D. performed plaintiff's medical examination. (Dkt. No. 1). Defendant's response papers indicate that Dr. Santa Maria is a board-certified neuropsychologist and that he performed a neuropsychological evaluation and independent medical examination of plaintiff. (Dkt. No. 5).

 **\*2**  On February 20, 2018, Sargent & Collins filed the instant motion to dismiss the complaint on the basis that plaintiff fails to assert any viable claims for relief. (Dkt. Nos. 3-5). Plaintiff filed responses in opposition to the motion to dismiss. [3] (Dkt. Nos. 8, 10). The responses allege, for the first time, that Sargent & Collins committed the criminal offense of "offering a false instrument for filing" and that their motion to dismiss his complaint was untimely. Defendant filed a reply in further support of the motion to dismiss on March 29, 2017. (Dkt. No. 9). On April 16, 2018, this Court heard oral argument as to defendant's motion to dismiss. [4]

[3]    The allegations and arguments in plaintiff's responses, like those in his complaint, lack clarity or coherence. His disjointed narrative sets forth a litany of grievances against Starpoint, Sargent & Collins, and Dr. Santa Maria. He attaches various documents including letters from Sargent & Collins and Starpoint relative to his leave and fitness for duty examination, Dr. Santa Maria's report from his neuropsychological evaluation and independent medical examination, a "transcript" of the medical examination that plaintiff transcribed himself, HIPAA releases provided to Dr. Santa Maria, plaintiff's individualized education plan from when he was enrolled in the Starpoint School District, internet research regarding Dr. Santa Maria's practice and areas of specialty, a decision in a prior federal lawsuit filed by plaintiff against Starpoint, and information regarding the elements of the crime of filing a false instrument. As best the Court can ascertain, plaintiff's chief complaint against defendant is that by providing legal representation to Starpoint when plaintiff was

placed on administrative leave, Sargent & Collins discriminated against him.

[4]    Also at that time, this Court heard oral argument as to the motion to dismiss and a request for a filing injunction on behalf of Starpoint in *Genco v. Starpoint Central School District*, and oral argument as to the motion to dismiss in *Genco v. Webster Szanyi LLP*.

## DISCUSSION

A defendant may move to dismiss a complaint on the ground that the complaint fails to state a claim on which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). In order to state a claim on which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a) (2). In reviewing a complaint in the context of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true all factual allegations and draw all reasonable inferences from those allegations in favor of the plaintiff. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Specifically, a complaint must plead "enough facts to state a claim to relief that is plausible on its face", *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must "allow[ ]the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Supreme Court has further instructed that "[d]etermining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense ... [w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Bell Atl. Corp.*, 550 U.S. at 679.

 **\*3**  Additionally, the court must be mindful when an individual is proceeding *pro se*. "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("[T]he submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest."). However, even a *pro se* complaint will be dismissed if it does not contain "sufficient

Genco v. Sargent & Collins LLP, Not Reported in Fed. Supp. (2018)

2018 WL 3827742

factual matter, accepted as true, 'to state a claim to relief that is plausible on its face'." *Ashcroft,* 556 U.S. at 678; *quoting Bell Atl. Corp.,* 550 U.S. at 570.

In reviewing Genco's complaint and response to the motion to dismiss, the Court has accepted as true all factual allegations, drawn all inferences in plaintiff's favor, and held plaintiff's *pro se* pleadings to a less stringent standard than those drafted by an attorney. Moreover, the Court has attempted to interpret Genco's lengthy, disjointed and confusing allegations and arguments in a manner consistent with a claim or claims upon which relief may be granted. However, the Court concludes that plaintiff has not stated a claim for relief that is plausible on its face.

Genco alleges that his placement on administrative leave and the requirement that he undergo a fitness for duty examination amounted to disability discrimination by Starpoint, his employer. He contends that Sargent & Collins also discriminated and retaliated against him based upon his disabilities by providing legal representation to Starpoint at the time these actions were taken. Indeed, plaintiff cannot maintain a cause of action against Sargent & Collins pursuant to the Americans with Disabilities Act ("ADA"). Title I of the ADA prohibits employers from discriminating against a qualified individual with a disability in regard to any aspect of employment. 42 U.S.C. § 12112(a) ("no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... the hiring, advancement, or discharge of employees ... and other terms, conditions, and privileges of employment."). Genco admits in his complaint that he is not a current or former employee of Sargent & Collins. Therefore, he cannot sue defendant for disability discrimination pursuant to Title I of the ADA. [5] *See Curry v. Town of Islip,* 13-CV-3597, 2017 U.S. Dist. LEXIS 203382, *10 (EDNY Dec. 8, 2017) (*sua sponte* recommendation that plaintiff's ADA claim be dismissed because she was not an employee or a former employee of defendant); *Lauria v. Donahue,* 438 F. Supp. 2d 131, 140 (EDNY 2006) (because plaintiff "was neither an employee, nor former employee of [the company], her claim under the ADA was dismissed."); *Morgenthal v. AT&T,* 97-CIV-6443, 1999 U.S. Dist. LEXIS 4294, at *4 (S.D.N.Y. 1999) (holding that because the plaintiff was not an employee of the defendant he could not be considered a "qualified individual" under the ADA).

[5]   Likewise, the facts of this lawsuit have nothing to do with the other four titles of the ADA,

which prohibit disability discrimination in: (1) access to public services, programs and activities provided by public entities (Title II); (2) access to public accommodations, such as hotels and theaters, provided by private entities (Title III); and (3) telecommunications (Title IV). *See* 42 U.S.C. §§ 12101-12213.

Plaintiff also seems to claim that in providing legal representation to Starpoint and communicating with the doctor who performed the fitness for duty examination, Sargent & Collins "assisted" Starpoint in placing plaintiff on unpaid leave. His complaint further alleges, albeit in a vague and confusing manner, that Starpoint failed to accommodate his disability with respect to a boiler training. However, it is unclear exactly how Sargent & Collins was involved in the alleged failure to accommodate. For the reasons just stated, to the extent that plaintiff is claiming that he suffered adverse employment actions on account of his disabilities during his tenure at Starpoint, his cause of action rests with his employer and not his employer's legal counsel. [6]

[6]       Similarly, plaintiff has failed to establish any viable claim for relief against Sargent & Collins based upon his allegations that the doctor who performed the fitness for duty examination was not a physician and that the examination was not performed in accordance with the New York State Civil Service Law or New York State Education Law. Plaintiff acknowledges in his complaint that Starpoint, his employer, placed him on administrative leave and sent him for a medical examination. No cause of action exists against Sargent & Collins for their role in facilitating the medical examination or communicating Starpoint's position to plaintiff or others. *See Hills v. Praxair, Inc.,* 11-CV-678, 2012 U.S. Dist. LEXIS 74125 (WDNY May 29, 2012) (dismissing plaintiff's complaint against the attorneys who represented his employer in defense of plaintiff's EEOC charge because, *inter alia,* statements made in quasi-judicial proceedings, such as arguments submitted in response in an EEOC charge or while representing a client at a hearing, are protected by absolute privilege).

**\*4** Further, even if plaintiff were able to bring a claim against Sargent & Collins under the ADA, Genco's conclusory allegations of discrimination fail to explain how benign actions taken by the law firm in course of representing a client, such as writing letters on behalf of their client or facilitating

Case 1:24-cv-00668-DNH-TWD    Document 12    Filed 11/07/24    Page 23 of 60

Genco v. Sargent & Collins LLP, Not Reported in Fed. Supp. (2018)

2018 WL 3827742

an independent medical examination and communicating the results, are in any way discriminatory or otherwise connected to plaintiff's disabilities. *See Iqbal*, 556 U.S. at 678 (Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully harmed-me accusation ... [n]or does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (internal citations and quotations omitted); *Reyes v. Fairfield Props.*, 661 F. Supp.2d 249, 268-269 (EDNY 2009) (conclusory statements that defendants retaliated and discriminated against plaintiff based upon race "do not establish plausibility on [their] face and are insufficient to satisfy even the liberal pleading standards under *Rule 8(a)* and *Iqbal*.").

Genco's allegations that Sargent & Collins was involved in the "unauthorized disclosure" of his medical information also fail to state a claim under federal law. Even if the Court were to construe these vague allegations as a claim under the Health Insurance Portability and Accountability Act ("HIPAA"), no such cause of action exists here. Sargent & Collins is not a health care provider and HIPAA does not provide private rights of action to individuals. *See Mathie v. Lawrence Womack*, 14-CV-6577, 2015 U.S. Dist. LEXIS 11266 (EDNY Jan. 29, 2015) (there is no private right of action under HIPAA and HIPAA enforcement actions are "in the exclusive purview of the Department of Health and Human Services"); *Hunt v. Conry, Simberg, Gannon, Drevans, Abel, Lurvey, Morrow & Schefer, P.A.*, 13-CV-1493, 2013 U.S. Dist. LEXIS 187052 (NDNY Dec. 11, 2013) (dismissing plaintiff's claim that law firm defendant disclosed medical information about plaintiff during the law suit because "the law firm is certainly not a health care provider, and plaintiff has no private right of action under HIPAA.").

Finally, to the extent plaintiff is attempting to assert causes of action based upon allegations that Sargent & Collins filed an untimely motion to dismiss or offered "a false instrument for filing", his claims lack even an arguable basis in law or fact. Offering a false instrument for filing is a violation of Section 175.35 of the New York State Penal Law, for which there is no private right of action. Furthermore, the record is bereft of evidence that defendant filed any document containing false or fraudulent information. Likewise, no cause of action exists for the untimely filing of a motion to dismiss a complaint nor is the instant motion to dismiss untimely. Genco served the summons and complaint on defendant on January 30, 2018. (Dkt. No. 2). Rule 12 of the Federal Rules of Civil Procedure indicates that a party has twenty-one days to answer or move to dismiss a complaint. *See* Fed. R. Civ. P 12(a). Rule 5 of

the Federal Rules of Civil Procedure provides that service is "complete upon mailing." *See* Fed. R. Civ. P. 5(b)(2)(C). Defendant filed the motion and mailed a copy to plaintiff on February 20, 2018, which is twenty-one days after the motion to dismiss was served.

For these reasons, the Court finds that plaintiff has not alleged a claim for relief that is plausible on its face and recommends that the complaint be dismissed. The Court now turns to whether the complaint should be dismissed with or without prejudice. The Second Circuit has advised that "[a] *pro se* complaint should not be dismissed without the Court's granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (internal citations omitted). However, leave to replead may be denied where it is apparent that no amendments would cure the deficiencies of the pleading and an attempt to replead would be futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [plaintiff's] cause[ ] of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."). *See also Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) ("[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied."). Here, the Court cannot identify any allegations in plaintiff's complaint that, even if properly pled, would constitute a viable claim under the law. The deficiencies are substantive in nature and cannot be remedied by amendment or repleading. Therefore, it is recommended that plaintiff's complaint against Sargent & Collins be dismissed with prejudice.

## CONCLUSION

**\*5** For the foregoing reasons, it is recommended that Sargent & Collins, LLP's motion to dismiss the complaint be granted and the complaint dismissed with prejudice. (Dkt. No. 3).

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby **ORDERED** that this Report, Recommendation and Order be filed with the Clerk of Court.

Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules

Case 1:24-cv-00668-DNH-TWD    Document 12    Filed 11/07/24    Page 24 of 60
Genco v. Sargent & Collins LLP, Not Reported in Fed. Supp. (2018)

2018 WL 3827742

72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and W.D.N.Y. L. R. Civ. P. 72. Any requests for an extension of this deadline must be made to Judge Vilardo.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** *See* *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See* Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990-91 (1st Cir. 1988).

*Finally, the parties are reminded that, pursuant to W.D.N.Y. L.R.Civ.P. 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."* ***Failure to comply with these provisions may result in the District Court's refusal to consider the objection.***

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 3827742

---

**End of Document**                                              © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:24-cv-00668-DNH-TWD    Document 12    Filed 11/07/24    Page 25 of 60

Constantine v. Merola, Not Reported in Fed. Supp. (2020)
2020 WL 8450544

2020 WL 8450544
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Sarah CONSTANTINE; and
NYS Deaf Community, Plaintiffs,

v.

Frank J. MEROLA, Rensselaer County Clerk;
NYS Department of Motor Vehicles; and 5
Unnamed Persons Employed by DMV, Defendants.

1:20-CV-1012 (DNH/ML)
|
Signed 11/06/2020

**Attorneys and Law Firms**

SARAH CONSTANTINE, Plaintiff, Pro Se, 10102 Waters
View Circle, Cohoes, New York 12047.

### ORDER and REPORT-RECOMMENDATION

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** The Clerk has sent this *pro se* complaint (Dkt. No. 1)
together with an application to proceed *in forma pauperis*
(Dkt. No. 2), filed by Sarah Constantine ("Plaintiff")[1] to
the Court for review. For the reasons discussed below, I (1)
grant Plaintiff's *in forma pauperis* application (Dkt. No. 2)
and (2) recommend that Plaintiff's Complaint (Dkt. No. 1) be
accepted in part for filing and dismissed in part.

[1]    Plaintiff, who is not an attorney, cannot represent
       other plaintiffs. Although parties have a statutory
       right to "plead and conduct their own cases," 28
       U.S.C. § 1654, unlicensed laypersons may not
       "represent anyone else other than themselves."
       *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir.
       2007) (internal quotation marks omitted); *see also
       Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) ("A
       person who has not been admitted to the practice
       of law may not represent anybody other than
       himself."). The Complaint names two plaintiffs—
       Sarah Constantine and the NYS Deaf Community.
       (Dkt. No. 1 at 1.) However, the Complaint and
       IFP application are only signed by Plaintiff. (Dkt.
       No. 1 at 4; Dkt. No. 2 at 2.) Plaintiff cannot

represent anyone other than herself. Accordingly, I
reviewed this action with Sarah Constantine as the
sole plaintiff. *See Yerushalayim v. Liecthung*, 19-
CV-4101, 2019 WL 3817125, at \*2 (E.D.N.Y. Aug.
13, 2019) (reviewing the action as brought by sole
plaintiff, Ben-Siyon Ish Yerushalayim, because
he was the only signatory on the complaint and
IFP application and, as an unlicensed layperson,
was incapable of representing the other named
plaintiffs).

### I. BACKGROUND

Construed as liberally[2] as possible, Plaintiff's Complaint
alleges that her civil rights were violated by Defendants Frank
J. Merola, Rensselaer County Clerk, NYS Department of
Motor Vehicles (the "DMV"), and five unnamed persons
employed by the DMV (collectively "Defendants").[3] (*See
generally* Dkt. No. 1.) The Complaint is a form-complaint
pursuant to the Americans with Disabilities Act ("ADA"), 42
U.S.C. § 12101 *et seq*. (*Id*.) Plaintiff alleges that she is "a
[d]eaf [w]oman and [m]ute" and that she "was discriminated
against [b]ecause [she is] [d]eaf and [b]ecause of [w]here
[she] live[s]." (*Id*. at 2.) More specifically, Plaintiff alleges
that on or about August 27, 2020 at 1:30 p.m., she was at
the DMV office in Troy, New York, when a female DMV
employee yelled at her, Plaintiff inquired whether she was
being denied service, and another female DMV employee
escorted Plaintiff elsewhere and told Plaintiff to "get the hell
out of her building." (*Id*.) Plaintiff alleges that she explained
to the DMV employees that she was deaf. (*Id*.) Plaintiff also
alleges that she was discriminated against because she "was
living in a different city." (*Id*.) Plaintiff asserts the following
three claims pursuant to the ADA: (1) a claim of denial of
participation in a public service or program, (2) a claim of
failure to make alterations to accommodate a disability, and
(3) a claim of retaliation. (*Id*.) As relief, Plaintiff requests that
an interpreter be provided any time a deaf person goes to the
DMV and that the DMV not discriminate against anyone for
being deaf or because of where they live. (*Id*.) Plaintiff also
seeks damages in the amount of $100,000.00. (*Id*.)

[2]    The court must interpret *pro se* complaints to
       raise the strongest arguments they suggest. *Soto v.
       Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting
       *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.
       1994)).

Case 1:24-cv-00668-DNH-TWD    Document 12    Filed 11/07/24    Page 26 of 60

Constantine v. Merola, Not Reported in Fed. Supp. (2020)

2020 WL 8450544

3    Defendant Merola and the five unnamed persons employed by the DMV are collectively referred to as "individual Defendants."

**\*2**  For a more complete statement of Plaintiff's claims, refer to the Complaint. (Dkt. No. 1.)

Plaintiff also filed an application for leave to proceed *in forma pauperis*. (Dkt. No. 2.)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). [4] After reviewing Plaintiff's amended *in forma pauperis* application (Dkt. No. 2), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed *in forma pauperis* is granted. [5]

4    The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

5    Plaintiff is reminded that, although the application to proceed *in forma pauperis* has been granted, she will still be required to pay fees that she may incur in this action, including copying and/or witness fees.

## III. LEGAL STANDARD FOR INITIAL REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

**\*3**  Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee).

Case 1:24-cv-00668-DNH-TWD    Document 12    Filed 11/07/24    Page 27 of 60

Constantine v. Merola, Not Reported in Fed. Supp. (2020)

2020 WL 8450544

"Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that Plaintiff's Complaint (Dkt. No. 1) be (1) accepted for filing with respect to the claims pursuant to Title II of the ADA against the DMV and individual Defendants in their official capacities, (2) dismissed without prejudice and with leave to amend with respect to the claims pursuant to Title V of the ADA against the DMV, and (3) dismissed with prejudice and without leave to amend with respect to the claims pursuant to (a) Title II of the ADA against the individual Defendants in their individual capacities, and (b) Title V of the ADA against the individual Defendants in their official and individual capacities.

### A. Discrimination

Plaintiff's discrimination claims appear to be pursuant to Title II of the ADA, which covers disability discrimination in public services, programs, and activities. [6] *Maioriello v. New York State Office for People with Developmental Disabilities*, 14-CV-0214, 2015 WL 5749879, at *12 (N.D.N.Y. Sept. 30, 2015) (Suddaby, C.J.) (citing *Tennessee v. Lane*, 541 U.S. 509, 533-34 (2004)).

[6]      The Court notes that, to the extent Plaintiff's claims are based on a violation of Title III of the ADA, those claims should be dismissed because "Title III expressly does not apply to public entities, including local governments." *Bloom v. Bexar Cnty.*, 130 F.3d 722, 726 (5th Cir. 1997); *see*

*Morales v. New York*, 22 F. Supp. 3d 256, 267 (S.D.N.Y. 2014) (stating that "[a] claim under Title III of [the ADA] can only be asserted against a private entity engaged in the provision of public accommodations, such as an inn, hotel or private school ... Title III is not applicable to public entities.") (collecting cases). Because the DMV is a public entity, Plaintiff cannot assert a Title III claim against it. *See Maioriello*, 2015 WL 5749879, at *16 (dismissing Title V claims based on a violation of Title III against New York because Title III does not apply to public entities).

**\*4**  "To establish a violation of Title II, plaintiff must show that: (1) he or she is a qualified individual with a disability; (2) the defendants are subject to the ADA; and (3) the plaintiff was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disabilities." *Doherty v. Bice*, 18-CV-10898, 2020 WL 5548790, at *6 (S.D.N.Y. Sept. 16, 2020) (citing *Shomo v. City of New York*, 579 F.3d 176, 185 (2d Cir. 2009)). "A qualified individual can base a discrimination claim on any of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009).

However, "individuals cannot be held liable under the ADA." *Netti v. Ayers*, 17-CV-0976, 2017 WL 7542494, at *18 (N.D.N.Y. Oct. 5, 2017) (Baxter, M.J.) (citing *Baross v. Greenlawn*, 16-CV-4805, 2017 WL 2124424, at *4 (E.D.N.Y. May 15, 2017)), *report and recommendation adopted by* 2018 WL 813509 (N.D.N.Y. Feb. 9, 2018) (Suddaby, C.J.); *accord Rosenfield v. New York State Div. of Veterans' Affairs*, 18-CV-1299, 2019 WL 4621962, at *10 (N.D.N.Y. Sept. 24, 2019) (Suddaby, C.J.); *see Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (holding that Title II of the ADA does not provide for suits against individuals); *Fox v. State Univ. of N.Y.*, 497 F. Supp. 2d 446, 449 (E.D.N.Y. 2007) ("[T]here is no individual liability under Title I or Title II of the ADA, or the ADEA."); *Sutherland v. New York State Dep't of Law*, 96-CV-6935, 1999 WL 314186, at *7 (S.D.N.Y. May 19, 1999) ("Individual defendants may not be held personally liable for alleged violations of the ADA.").

To the extent that Plaintiff sued individual Defendants in their individual capacities under the ADA, I recommend that those claims be dismissed with prejudice. *See Doherty*, 2020 WL

Constantine v. Merola, Not Reported in Fed. Supp. (2020)

2020 WL 8450544

5548790, at *10 (quoting *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001)) (dismissing with prejudice claims against the defendants in their individual capacities pursuant to Title II of the ADA because that statute does not "provid[e] for individual capacity suits against state officials.").

Out of an abundance of caution, and mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), I find that a response is required to Plaintiff's Title II ADA claim against the DMV and individual Defendants in their official capacities. [7] *See Doherty*, 2020 WL 5548790, at *10 (citing *Goonewardena v. New York*, 475 F. Supp. 2d 310, 327 (S.D.N.Y. 2007)) (holding that the plaintiff's "ADA claim may proceed against [the d]efendants in their official capacities.")

[7]    The law in this Circuit is not settled with respect to whether Plaintiff may seek monetary damages against state actors for violations of Title II. "For some time in this Circuit, a plaintiff seeking monetary damages against a [state agency] to remedy an alleged Title II violation was required to show 'not only that there was a violation, but that such violation was motivated either by discriminatory animus or ill will stemming from plaintiff's disability.' " *Doherty*, 2020 WL 5548790, at *8 (quoting *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 89 (2d Cir. 2004); citing *Garcia*, 280 F.3d at 112). However, "[t]he Supreme Court's opinion in *United States v. Georgia*, 546 U.S. 151 (2006), 'has call[ed] *Garcia*'s validity into question' and suggested that ADA claims for damages may proceed under expanded circumstances." *Doherty*, 2020 WL 5548790, at *8 (quoting *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 194 (2d Cir. 2015)). "The Second Circuit in *Dean* left open the question of whether Congress validly abrogated state sovereign immunity under Title II of the ADA." *Id.* (citing *Dean*, 804 F.3d at 193-95 ("We express no position as to the question of whether Congress has validly abrogated sovereign immunity in the context of discrimination in access to public education on the basis of disability.")). The Second Circuit instructed district courts to apply the tripartite test articulated in *Georgia*, when

considering whether Congress abrogated states' sovereign immunity under Title II. *Dean*, 804 F.2d at 195. Therefore, Courts are to consider

> on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct has violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Dean*, 804 F.3d at 194 (quoting *Georgia*, 546 U.S. at 159). Given the deference given to *pro se* pleadings, the procedural posture of the case, and the " 'growing fracture' among courts in this Circuit as to how to determine valid abrogation of state sovereign immunity when no Fourteenth Amendment violation is alleged," *Rosen v. Pallito*, 13-CV-0277, 2017 WL 6513663, at *3 (D. Vt. Dec. 19, 2017), I recommend that the Court defer consideration of the *Georgia* factors until such time as the parties deem it appropriate to bring them before the Court. *Compare Doherty*, 2020 WL 5548790, at *8-9 (conducting the *Georgia* analysis on a motion to dismiss and holding that "Plaintiff's ADA claims for monetary damages shall ... not be dismissed on the ground of sovereign immunity."), *Saunders v. Ryan*, 17-CV-0765, 2018 WL 4275987, at *6 (N.D.N.Y. Sept. 7, 2018) (Kahn, J.) (holding that "[w]ithout more substantive briefing on the issue [of the plaintiff's ADA claims for monetary damages based on the doctrine of sovereign immunity], the Court will not decide such a thorny question."), *Kearney v. Adams*, 15-CV-0824, 2018 WL 3121618, at *10-11 (N.D.N.Y. Feb. 8, 2018) (Hummel, M.J.) (on a motion for summary judgment, noting the divergent approaches adopted by district courts in the Circuit tasked with determining whether Eleventh Amendment immunity applies to Title II ADA claims, but ultimately holding that "because ... the plaintiff's ADA claim [should be] dismissed, the sovereign immunity inquiry must end."), *report and recommendation adopted by* 2018 WL 1470579 (N.D.N.Y. Mar. 26, 2018) (Sharpe, J.), *and Quezada v. Fischer*, 13-CV-0885, 2017 WL 9509993, at *36 (N.D.N.Y. Aug. 31, 2017) (Dancks, M.J.) (on a motion for summary judgment finding that because "no reasonable

jury would find Plaintiff's substantive due process rights under the Fourteenth Amendment violated under *Georgia*" the plaintiff's "hearing impairment claim under the ADA" should be "barred under the Eleventh Amendment."), *report and recommendation adopted by* 2017 WL 4286304 (N.D.N.Y. Sept. 27, 2017) (D'Agostino, J.), *with LaPietra v. City of Albany Police Dep't*, 19-CV-1527, 2020 WL 5891888, at *14 (N.D.N.Y. Oct. 5, 2020) (Dancks, M.J.) (citing *Keitt v. New York City*, 882 F. Supp. 2d 412, 455-57 (S.D.N.Y. 2011)) (holding that "[w]hile individuals may be sued under the ADA in their official capacities, a plaintiff must plead that the defendant 'was motivated by discriminatory animus or ill-will based on the plaintiff's disability.' "), *Manuel v. New York*, 18-CV-11820, 2020 WL 5775271, at *3 (S.D.N.Y. Sept. 28, 2020) (dismissing the plaintiff's ADA claim for monetary damages on a motion to dismiss, based on the doctrine of sovereign immunity set forth in *Garcia* without mentioning *Georgia* or *Dean*), and *Rosenfield v. New York State Div. of Veterans' Affairs*, 18-CV-1299, 2019 WL 4621962, at *8-9 (N.D.N.Y. Sept. 24, 2019) (Suddaby, C.J.) (same).

**B. Retaliation**

**\*5** "Title V of the ADA 'prohibits, *inter alia*, retaliation against any individual who has asserted rights under the ADA.' " *Currytto v. Doe*, 18-CV-1392, 2019 WL 2062432, at *8 (D. Conn. May 9, 2019) (citing *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999)). "To state a retaliation claim under [the ADA], a plaintiff must establish that '(i) plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action.' " *Currytto*, 2019 WL 2062432, at *8 (quoting *Weixel v. Bd. of Educ.*, 287 F.3d 139, 148 (2d Cir. 2002)).

The Complaint fails to allege that Plaintiff engaged in any protected activity, that any Defendant knew that Plaintiff was involved in the protected activity, or that any adverse decision or course of action taken by Defendants was causally connected to that protected activity. (Dkt. No. 1.)

Accordingly, I recommend dismissal of Plaintiff's ADA retaliation claim for failure to state a claim.[8]

[8] It is not clear whether states retain their sovereign immunity against retaliation claims brought under Title V of the ADA. *Compare Quadir v. New York State Dep't of Labor*, 39 F. Supp. 3d 528, 536-37 (S.D.N.Y. Aug. 19, 2014) (collecting cases) ("[S]tates retain their sovereign immunity against ... Title V retaliation claims—at least to the extent that those claims are predicated on ADA Title I discrimination claims"), *with Maioriello*, 2015 WL 5749879, at *12 (holding that "insofar as Plaintiff can state a claim under Title II ... of the ADA, her Title V claim will not be barred by the Eleventh Amendment"). Plaintiff's retaliation claim appears to be based on her Title II claim —as opposed to a Title I claim (because she does not allege an employment relationship with Defendants)—and thus, would not be barred by Eleventh Amendment immunity.

In addition, "no claim under Title V may be maintained against an individual defendant, including [Defendant Merola or the five unnamed individuals employed by the DMV], whether acting in an official, or personal, capacity." *Dorsey v. Sullivan*, 10-CV-0744, 2013 WL 4776344, at *9 (W.D.N.Y. Sept. 3, 2013) (citing *Warren v. Goord,* 99-CV-0296, 2006 WL 1582385, at *17-20 (W.D.N.Y. May 26, 2006)) (holding "[t]he failure to so provide for a remedy [for retaliation] is consistent with the fact that nowhere within the ADA's statutory scheme is there any provision for a cause of action against an individual defendant, regardless of capacity, for any substantive violation of ADA Titles I, II or III [such that] construing Title V in light of the ADA's complete statutory scheme ... establishes that Title V similarly does not provide for a claim for retaliation against an individual defendant."), *aff'd,* 2008 WL 5077004 (2d Cir. 2008).

As a result, I recommend that claims against Defendants Merola and the five unnamed DMV employees be dismissed with prejudice.

**V. OPPORTUNITY TO AMEND**

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to

2020 WL 8450544

amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [9]

[9]   See also *Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

**6** In this case, I am unable to conclude with complete certainty that if permitted leave to amend the complaint, Plaintiff could not assert a plausible claim pursuant to Title V against the DMV. Accordingly, I recommend that leave to amend be granted with respect to that claim. However, with respect to the claims pursuant to (1) Title II of the ADA against Defendants Merola and the five unnamed DMV employees in their individual capacities, and (2) Title V against Defendants Merola and the five unnamed DMV employees in either their official or individual capacities, I conclude that granting leave to amend would not likely be productive and recommend that those claims be dismissed without leave to amend. *See Doherty*, 2020 WL 5548790, at *10 (quoting *Garcia*, 280 F.3d at 107) (dismissing with prejudice claims against the defendants in their individual capacities pursuant to Title II of the ADA); *Dorsey*, 2013 WL 4776344, at *9 (holding that "no claim under Title V may be maintained against an individual defendant ... whether acting in an official, or personal, capacity.").

If Plaintiff chooses to file an amended complaint, she should note that the law in this circuit clearly provides

that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be accepted for filing with respect to Plaintiff's claims pursuant to Title II of the ADA against the DMV and Defendants Merola and the five unnamed employees of the DMV in their official capacities; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) to the extent that it asserts claims pursuant to Title V against the DMV, for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(B); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) to the extent that it asserts claims pursuant to (1) Title II of the ADA against Defendants Merola and the five unnamed DMV employees in their individual capacities, and (2) Title

Constantine v. Merola, Not Reported in Fed. Supp. (2020)

2020 WL 8450544

V against Defendants Merola and the five unnamed DMV employees in either their official or individual capacities, for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(B); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD** any claims brought on behalf of "NYS Deaf Community" (Dkt. No. 1) because Plaintiff, who is not an attorney, cannot represent other plaintiffs; and it is further

 **\*7  ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [10] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT**

**TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

[10]  If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2020 WL 8450544

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:24-cv-00668-DNH-TWD    Document 12    Filed 11/07/24    Page 32 of 60

Constantine v. NYS Deaf Community, Not Reported in Fed. Supp. (2021)

2021 WL 392487

2021 WL 392487
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Sarah CONSTANTINE, Plaintiff,

v.

NYS DEAF COMMUNITY et al., Defendants.

1:20-CV-1012
|
Signed 02/04/2021

**Attorneys and Law Firms**

Sarah Constantine, Plaintiff, Pro Se, 251 Old Post Road,
Ballston Spa, NY 12020.

**DECISION and ORDER**

DAVID N. HURD, United States District Judge

 **\*1** Pro se plaintiff Sarah Constantine ("plaintiff") filed
this civil rights action alleging that defendants discriminated
against her because she is deaf. On November 6, 2020,
U.S. Magistrate Judge Miroslav Lovric advised by Report &
Recommendation that plaintiff's complaint be accepted in part
for filing and dismissed in part without leave to amend. Dkt.
No. 4. After plaintiff filed with the Court a notice of change of
address, Dkt. No. 5, plaintiff was given an additional period
of time in which to lodge any objections to Judge Lovric's
Report & Recommendation, Dkt. No. 6. Plaintiff has not filed
an objection.

Upon review for clear error, the Report & Recommendation
is accepted and adopted in all respects. *See* FED. R. CIV. P.
72(b).

Therefore, it is

ORDERED that

1. Plaintiff's complaint is ACCEPTED for filing with respect
to Plaintiff's claims pursuant to Title II of the ADA against
the DMV and defendants Merola and the five unnamed
employees of the DMV in their official capacities;

2. Plaintiff's complaint is DISMISSED without leave to
amend to the extent it asserts claims pursuant to Title V
against the DMV for failure to state a claim under 28 U.S.C.
§ 1915(e)(1)(B)(ii);

3. Plaintiff's complaint is DISMISSED without leave to
amend to the extent that it asserts claims under (1) Title II
of the ADA against defendants Merola and the five unnamed
DMV employees in their individual capacities; and (2) Title
V of the ADA against defendants Merola and the five
unnamed DMV employees in either their official or individual
capacities, for failure to state a claim under 28 U.S.C. §
1915(e)(1)(B)(ii); and

4. Plaintiff's complaint is DISMISSED with leave to amend
any claims brought on behalf of "NYS Deaf Community"
because plaintiff, who is not an attorney, cannot represent
other plaintiffs.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 392487

---

Case 1:24-cv-00668-DNH-TWD    Document 12    Filed 11/07/24    Page 33 of 60
Valdez v. Social Security Administration, Not Reported in Fed. Supp. (2020)

2020 WL 2575892

2020 WL 2575892
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Tyler A. VALDEZ, Plaintiff,
v.
SOCIAL SECURITY ADMINISTRATION, Defendant.

8:20-CV-35 (GTS/DJS)
|
Signed 04/23/2020

**Attorneys and Law Firms**

TYLER A. VALDEZ, Plaintiff, Pro Se, 2091 Plumbrook Road, Norfolk, New York 13667.

**REPORT-RECOMMENDATION and ORDER**

DANIEL J. STEWART, United States Magistrate Judge

**\*1** The Clerk has sent to the Court a *pro se* Complaint filed by Tyler Valdez. Dkt. No. 1, Compl. Plaintiff has not paid the filing fee, but instead submitted a Motion to Proceed *in Forma Pauperis* (IFP). Dkt. No. 2. By separate Order, this Court granted Plaintiff's Application to proceed IFP. Now, in accordance with 28 U.S.C. § 1915(e), the Court will *sua sponte* review the sufficiency of the Complaint.

**I. DISCUSSION**

**A. Pleading Requirements**

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action.

In reviewing a *pro se* complaint, this Court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912

F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme caution ... in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (emphasis in original) (citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). A pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* at 678 (further citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555, for the proposition that Federal Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 Fed. Appx. 102, 104 (2d Cir. 2009).

**\*2** Furthermore, a court's initial review of a complaint under § 1915(e) must encompass the applicable standards of the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Case 1:24-cv-00668-DNH-TWD    Document 12    Filed 11/07/24    Page 34 of 60

Valdez v. Social Security Administration, Not Reported in Fed. Supp. (2020)

2020 WL 2575892

FED. R. CIV. P. 8(a). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Hudson v. Artuz*, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995)). Moreover, Rule 10 of the Federal Rules of Civil Procedure provides, in part:

> **(b) Paragraphs; Separate Statements.** A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). The purpose of Rule 10 is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Sandler v. Capanna*, 1992 WL 392597, at *3 (E.D. Pa. Dec. 17, 1992) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1323 at 735 (1990)).

A complaint that fails to comply with these Rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). "Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Hudson v. Artuz*, 1998 WL 832708, at *2 (internal quotation marks omitted). In those cases in which the court dismisses a *pro se* complaint for failure to comply with these Rules, it should afford the plaintiff leave to amend the complaint to state a claim that is on its face nonfrivolous. See *Simmons v. Abruzzo*, 49 F.3d 83, 86-87 (2d Cir. 1995).

## B. Allegations Contained in Plaintiff's Complaint

Plaintiff has filed his Complaint on a form complaint for claims brought pursuant to the Americans with Disabilities Act ("ADA"). Compl. The Complaint alleges that Plaintiff suffers from "complex regional syndrome, tendonitis, shoulder and back pain, and trauma" as well as severe nerve damage. *Id.* at p. 2. On the form he checked a box indicating that his ADA claim related to the failure to make alterations to accommodate his disability, but there is no assertion that he was an employee of Defendant or in what manner he needed to be accommodated. *Id.* at p. 3. The Complaint then cites without explanation to various medical records. *Id.* The Court notes that the records cited are those typically seen in the administrative record of a challenge to the denial of disability benefits under section 405(g). Plaintiff seeks 70 million dollars in punitive damages. *Id.* at p. 4.

## C. Analysis of Plaintiff's Claims

**\*3** The nature of Plaintiff's claim here is unclear. Though styled as a claim under the ADA, Plaintiff has not pled sufficient facts to support such a claim at this juncture. Certain allegations in the Complaint, however, suggest that what Plaintiff may be seeking is judicial review of an administrative decision denying benefits under the Social Security Act. Given the uncertainty and the lack of specificity in Plaintiff's pleadings, the Court recommends that this action be dismissed, but that the dismissal be without prejudice and that Plaintiff be permitted thirty days within which to file an amended complaint that specifically clarifies the exact nature of Plaintiff's claim.

The Court advises Plaintiff that should he be permitted to amend his Complaint, any amended pleading he submits must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Any such amended complaint, **which shall supersede and replace in its entirety the previous Complaint filed by Plaintiff**, must contain **sequentially numbered paragraphs containing only one act of misconduct per paragraph**. Thus, if Plaintiff claims that his civil and/or constitutional rights were violated by more than one defendant, or on more than one occasion, he should include a corresponding number of paragraphs in his amended complaint for each such allegation, with each paragraph specifying (i) the alleged act of misconduct; (ii) the date, including the year, on which such misconduct occurred; (iii)

Valdez v. Social Security Administration, Not Reported in Fed. Supp. (2020)
2020 WL 2575892

the names of each and every individual who participated in such misconduct; (iv) where appropriate, the location where the alleged misconduct occurred; and, (v) the nexus between such misconduct and Plaintiff's civil and/or constitutional rights.

Plaintiff is further cautioned that no portion of his prior Complaint shall be incorporated into his amended complaint by reference. Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the defendants and must demonstrate that a case or controversy exists between the Plaintiff and the defendants which Plaintiff has a legal right to pursue and over which this Court has jurisdiction. If Plaintiff is alleging that the named defendants violated a law, he should specifically make reference to such law.

## II. CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that Plaintiff's Complaint be **DISMISSED without prejudice and that Plaintiff be granted leave to replead**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) [1] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

[1]     If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2020 WL 2575892

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:24-cv-00668-DNH-TWD    Document 12    Filed 11/07/24    Page 36 of 60
Valdez v. Social Security Administration, Not Reported in Fed. Supp. (2020)
2020 WL 2574632

2020 WL 2574632
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Tyler A. VALDEZ, Plaintiff,

v.

SOCIAL SECURITY ADMINISTRATION, Defendant.

8:20-CV-0035 (GTS/DJS)
|
Signed 05/21/2020

**Attorneys and Law Firms**

TYLER A. VALDEZ, Plaintiff, Pro Se, 2091 Plumbrook
Road, Norfolk, New York 13667.

**DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District Judge

 **\*1**  Currently before the Court, in this *pro se* action
filed by Jamel L. Jenkins ("Plaintiff") against the Social
Security Administration ("Defendant") asserting claims
under the Americans with Disabilities Act, is United
States Magistrate Judge Daniel J. Stewart's Report-
Recommendation recommending Plaintiff's Complaint be *sua
sponte* dismissed without prejudice and with leave to amend
for failure to state a claim upon which relief may be granted.
(Dkt. No. 5.) Plaintiff has not filed an Objection to the Report-
Recommendation, and the deadline in which to do so has
expired. (*See generally* Docket Sheet.)

After carefully reviewing the relevant papers herein,
including Magistrate Judge Stewart's thorough Report-
Recommendation, the Court can find no clear-error in
the Report-Recommendation.[1] Magistrate Judge Stewart
employed the proper standards, accurately recited the facts,
and reasonably applied the law to those facts. As a result,
the Report-Recommendation is accepted and adopted in its
entirety for the reasons set forth therein, and Plaintiff's
Complaint shall be dismissed with prejudice unless, within

thirty days of the date of this Decision and Order, Plaintiff
files an Amended Complaint that corrects the pleading defects
in his original Complaint.

[1]     When no objection is made to a report-
       recommendation, the Court subjects that report-
       recommendation to only a clear error review. Fed.
       R. Civ. P. 72(b), Advisory Committee Notes: 1983
       Addition. When performing such a "clear error"
       review, "the court need only satisfy itself that there
       is no clear error on the face of the record in order to
       accept the recommendation." *Id.*; *see also Batista
       v. Walker*, 94-CV-2826, 1995 WL 453299, at \*1
       (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am
       permitted to adopt those sections of [a magistrate
       judge's] report to which no specific objection is
       made, so long as those sections are not facially
       erroneous.") (internal quotation marks omitted).

ACCORDINGLY, it is

ORDERED that Magistrate Judge Stewart's Report-
Recommendation (Dkt. No. 5) is **ACCEPTED** and
**ADOPTED** in its entirety; and it is further

ORDERED that Plaintiff's Complaint (Dkt. No. 1) shall be
**DISMISSED with prejudice UNLESS, within THIRTY
(30) DAYS** of the date of this Decision and Order, Plaintiff
files as Amended Complaint that corrects the pleading defects
identified in the Report-Recommendation; and it is further

ORDERED that, should Plaintiff not file an Amended
Complaint within thirty days of the date of this Decision and
Order, Plaintiff's Complaint shall be dismissed with prejudice
without further Order of the Court; and it is further

ORDERED that, should Plaintiff file an Amended
Complaint, it shall be referred to Magistrate Judge Stewart for
his review pursuant to 28 U.S.C. § 1915(e).

**All Citations**

Not Reported in Fed. Supp., 2020 WL 2574632

KeyCite Blue Flag – Appeal Notification

Appeal Filed by Dees v. Zurlo, 2nd Cir., June 12, 2024

2024 WL 2291701
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jennifer Lynn DEES and Ethan Davis Smith, Plaintiffs,

v.

Michael ZURLO, et al., Defendants.

1:24-CV-1 (MAD/DJS)
|
Signed May 21, 2024

**Attorneys and Law Firms**

JENNIFER LYNN DEES and ETHAN DAVIS SMITH, 16 Grant Hill Road, Clifton Park, New York 12065, Plaintiffs, pro se.

**MEMORANDUM-DECISION AND ORDER**

Mae A. D'Agostino, United States District Judge:

**I. INTRODUCTION**

**\*1** On January 2, 2024, Plaintiffs Jennifer Lynn Dees and Ethan Davis Smith commenced this action, *pro se*, against fifty-three Defendants. *See* Dkt. No. 1. In their 170-page complaint, Plaintiffs allege that Defendants have deprived them of various constitutional rights because of Defendants' roles and involvement in state-court custody, support, and/or criminal disputes. *See id.* Plaintiffs submitted applications to proceed *in forma pauperis* ("IFP") and for leave to file electronically. *See* Dkt. Nos. 2, 3, 4, 5.

On March 11, 2024, Magistrate Judge Daniel J. Stewart issued an Order granting Plaintiffs' IFP motions. *See* Dkt. No. 11. Magistrate Judge Stewart also issued a Report-Recommendation and Order reviewing Plaintiffs' complaint pursuant to 28 U.S.C. § 1915(e) and recommending that the complaint be dismissed. *See* Dkt. No. 12. He also ordered that Plaintiffs be denied leave to file electronically. *See id.*

Plaintiffs objected to every single aspect of the Report-Recommendation and Order. *See* Dkt. No. 13. [1] "Generally, when a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review." *Boice v. M+W U.S., Inc.*, 130 F. Supp. 3d 677, 683 (N.D.N.Y. 2015) (citing FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C)). "To be 'specific,' the objection must, with particularity, 'identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection.' " *Id.* (quoting N.D.N.Y. 72.1(c)) (footnote omitted). "When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review." *Id.* at 684 (citations omitted). "Similarly, when an objection merely reiterates the same arguments made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review." *Id.* (footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

[1]     Plaintiffs' objections are thirty-eight pages. *See* Dkt. No. 13. Local Rule 71.2(c) instructs that "[o]bjections may not exceed twenty-five (25) pages without the Court's prior approval." N.D.N.Y. L.R. 72.1(c). The Court will consider the entirety of Plaintiffs' objections because they are proceeding *pro se*. However, the Court warns Plaintiffs that future compliance with the Federal Rules, the Court's Local Rules, and the undersigned's Individual Rules is required.

As Plaintiffs are proceeding *pro se*, the Court must review their complaint under a more lenient standard. *See Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003). The Court must "make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983). Thus, "a document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "Although the court has the duty to show liberality towards pro se litigants, ... there is a responsibility on the court to determine that a claim has some arguable basis in law before permitting a plaintiff to proceed with an action in forma pauperis." *Moreman v. Douglas*,

848 F. Supp. 332, 333-34 (N.D.N.Y. 1994) (internal citations omitted).

## II. BACKGROUND

**\*2** Plaintiffs summarize their claims at the beginning of their complaint as allegations against "a broad spectrum of governmental entities and private defendants" including judges, attorneys, family members, the Saratoga County Sheriff's Office, district attorneys' offices, departments of social service, Warren County, Saratoga County, and the City of Mechanicville. Dkt. No. 1 at ¶ 2. The complaint concerns New York State Family Court and County Court proceedings and events related to custody and supervision of Plaintiff Smith's children. The proceedings are primarily between Plaintiff Smith and Defendant Veronica Smith— the mother of his children. Plaintiff Dees is Plaintiff Smith's partner. Plaintiffs allege that the Defendants engaged in a conspiracy to violate their constitutional rights as well as Plaintiff Smith's rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

For a fuller recitation of the relevant background information, the Court refers to Plaintiffs' complaint and Magistrate Judge Stewart's Report-Recommendation and Order. *See generally* Dkt. No. 1; *see also* Dkt. No. 12 at 4-5.

## III. DISCUSSION

### A. *Rooker-Feldman* Doctrine
In his Report-Recommendation and Order, Magistrate Judge Stewart first addressed the *Rooker-Feldman* doctrine, under which federal courts are divested of jurisdiction over claims that seek to overrule state court determinations. *See* Dkt. No. 12 at 8-9; *see also Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009). Magistrate Judge Stewart concluded that because Plaintiffs' complaint seeks to overturn state-court custody and support decisions, the Court's review of Plaintiffs' claims is barred by the *Rooker-Feldman* doctrine. *See* Dkt. No. 12 at 8. Plaintiffs object, arguing that because they have appealed the state court decisions, and those appeals have not been decided, the *Rooker-Feldman* doctrine does not apply. *See* Dkt. No. 13 at 1-3.

"The Supreme Court has explained that *Rooker-Feldman* bars 'a party losing in state court ... from seeking what in substance would be appellate review of the state judgment in a United States district court.'" *Hunter v. McMahon*, 75 F.4th 62, 67 (2d Cir. 2023) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994)). "*Rooker-Feldman* 'is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Id.* at 67-68 (quotation omitted). "The doctrine 'does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.'" *Id.* at 68 (quotation omitted).

The doctrine " 'applies only in limited circumstances where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court.'" *Id.* (quoting *Lance v. Dennis*, 546 U.S. 459, 466 (2006)). In adopting "the unanimous position of every other circuit court to address it[,]" the Second Circuit in *Hunter* held that "[i]f a federal-court plaintiff's state-court appeal remains pending when she files her federal suit, the state-court proceedings have not ended and *Rooker-Feldman* does not apply." *Id.* at 70 (quoting *Butcher v. Wendt*, 975 F.3d 236, 246 (2d Cir. 2020) (Menashi, J., concurring in part and concurring in the judgment)).

In their objections, Plaintiffs list eight "currently pending" appeals. Dkt. No. 13 at 1-2. The relevant inquiry is whether those appeals were pending when they filed their complaint with this Court on January 2, 2024. *See* Dkt. No. 1; *see also Hunter*, 75 F.4th at 71 (quoting *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 163 (2d Cir. 2001)) ("[F]ederal courts 'assess[ ] jurisdiction ... as of the moment the complaint was filed' "). Upon the Court's review of the state court dockets, seven of the eight appeals that Plaintiffs list were pending at the time they filed their complaint in this Court. *See Smith v. Smith*, CV-23-1726 (3d Dep't 2023); *Smith v. Smith*, CV-23-1805 (3d Dep't 2023); *Veronica LL. v. Ethan LL.*, CV-23-1874 (3d Dep't 2023); *Smith v. Smith*, CV-23-1265 (3d Dep't 2023); *Smith v. Smith*, CV-23-1642 (3d Dep't 2023); *Matter of Smith v. Smith*, CV-23-2087 (3d Dep't 2023); *Matter of Smith v. Smith*, CV-23-2195 (3d Dep't 2023); *Matter of Ethan LL v. Veronica LL*, CV-24-0306 (3d Dep't 2024). Plaintiffs also contend that their "Article 78 action CV-23-1727, against multiple defendants still remains open." Dkt. No. 13 at 2. Upon the Court's search of that case number in the New York State Unified Court System Electronic Filing System, it appears that the final entry is an

"order" dated November 21, 2023. *See Ethan Smith et al. v. Karen Heggen et al.*, CV-23-1727 (3d Dep't 2023), Dkt. No. 36. The Court is unable to view the document as it is sealed. *See id.* Plaintiffs do not contend that they appealed this "order" from the Appellate Division.

 **\*3** To the extent Plaintiffs have not appealed Supreme Court, Family Court, or Appellate Division decisions, and such decisions are final, the *Rooker-Feldman* doctrine precludes the Court's consideration of the decisions in which Plaintiffs lost. Insofar as appeals are pending in the Appellate Division from Supreme Court or Family Court decisions, Plaintiffs are correct that the *Rooker-Feldman* doctrine does not apply. *See Hunter*, 75 F.4th at 67-71. However, even where the *Rooker-Feldman* doctrine does not apply, as thoroughly set forth in Magistrate Judge Stewart's Report-Recommendation and Order, Plaintiffs' complaint must be dismissed on numerous other grounds.

## B. *Younger* Abstention

Magistrate Judge Stewart next addressed the *Younger* abstention doctrine which mandates that federal courts abstain from interfering in claims seeking declaratory or injunctive relief over ongoing state proceedings. *See* Dkt. No. 12 at 10 (citing *Younger v. Harris*, 401 U.S. 37, 43-44 (1971)). Magistrate Judge Stewart explained that *Younger* abstention does not apply to claims seeking only monetary relief, as Plaintiffs do in this case, but noted that the doctrine implicates "domestic relations" abstention, which "is based upon a policy dictating that the states have traditionally adjudicated marital and child custody disputes, developing 'competence and expertise in adjudicating such matters, which the federal courts lack.' " Dkt. No. 12 at 10 (quoting *Thomas v. N.Y. City*, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993)).

Plaintiffs objected, arguing that they are not seeking declaratory or injunctive relief, so *Younger* abstention does not apply. *See* Dkt. No. 13 at 5. Plaintiffs contends that "[t]he principle of Younger abstention typically applies in scenarios where significant state interests are at stake and does not extend to precluding federal jurisdiction merely due to possible inconsistencies with state court rulings." *Id.* at 6.

*Younger* demands that

    federal courts [ ] decline to exercise jurisdiction in three [ ] exceptional categories of cases: "First, *Younger* preclude[s] federal intrusion into ongoing state criminal prosecutions. Second, certain civil enforcement proceedings warrant[ ]

abstention. Finally, federal courts [must] refrain[ ] from interfering with pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions."

*Trump v. Vance*, 941 F.3d 631, 637 (2d Cir. 2019), *aff'd and remanded*, 591 U.S. 786 (2020) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013)). "*Younger* abstention is [ ] an 'exception to th[e] general rule' that 'a federal court's obligation to hear and decide a case is virtually unflagging,' ... and the doctrine is also subject to exceptions of its own in cases of bad faith, harassment, or other 'extraordinary circumstances.' " *Id.* (quotations omitted). "[T]he *Younger* doctrine is inappropriate where the litigant seeks money damages for an alleged violation of § 1983." *Rivers v. McLeod*, 252 F.3d 99, 101-02 (2d Cir. 2001).

The Second Circuit, in *American Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990), explained that "[a]lthough matrimonial actions may ordinarily be instituted in federal court on diversity grounds, the Supreme Court in *Barber v. Barber*, 62 U.S. .. 582, 584 ... (1859), went so far as to disclaim all federal subject matter jurisdiction for some classes of matrimonial actions." *Id.* This is known as the domestic relations exception to federal jurisdiction, *i.e.*, federal courts should not exercise jurisdiction over matrimonial actions brought under diversity grounds. "[H]owever, the scope of this matrimonial exception to federal jurisdiction is 'rather narrowly confined,' ... only 'where a federal court is asked to grant a divorce or annulment, determine support payments, or award custody of a child' does it generally decline jurisdiction pursuant to the matrimonial exception." *Id.* (quotations omitted). The Second Circuit, in *American Airlines*, expanded the domestic relations exception, noting that "even if subject matter jurisdiction lies over a particular matrimonial action, federal courts may properly abstain from adjudicating such actions in view of the greater interest and expertise of state courts in this field." *Id.* "A federal court presented with matrimonial issues or issues 'on the verge' of being matrimonial in nature should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination in state courts." *Id.* (citations omitted). This is known as the domestic relations abstention doctrine. *See Deem v. DiMella-Deem*, 941 F.3d 618, 621 (2d Cir. 2019) ("Although the domestic relations '*exception*' to subject matter jurisdiction ... does not apply in federal-question cases, the domestic relations *abstention* doctrine articulated in *American Airlines* does").

**\*4** The abstention doctrine has been utilized across the country by federal courts removing themselves from considering a state court domestic relations matter. *See Deem, 941 F.3d at 623* (collecting cases) (citing, *inter alia, DeMauro v. DeMauro*, 115 F.3d 94, 99 (1st Cir. 1997) ("[A]bstention by use of a stay may be permissible where a RICO action is directed against concealment or transfer of property that is the very subject of a pending divorce proceeding")); *see also Falco v. Justs. of the Matrimonial Parts of Supreme Ct. of Suffolk Cnty.*, 805 F.3d 425, 427 (2d Cir. 2015) (quotation omitted) ("[W]e independently conclude that Falco's case presents circumstances that qualify as 'exceptional' under *Sprint* and that *Younger* abstention was therefore warranted. Falco's federal lawsuit implicates the way that New York courts manage their own divorce and custody proceedings—a subject in which 'the states have an especially strong interest' ").

Here, "the domestic relations *exception* clearly does not apply to this case because it is 'before this Court on federal question jurisdiction, not diversity.' " *Deem, 941 F.3d at 623* (quoting *Williams v. Lambert*, 46 F.3d 1275 (2d Cir. 1995)) (emphasis added). However, *abstention* is appropriate because Plaintiffs' complaint concerns family court disputes over custody, visitation, and protective orders. *See Reeves v. Reeves*, No. 22-CV-2544, 2022 WL 1125267, \*1 (S.D.N.Y. Apr. 14, 2022); *Stumpf v. Maywalt*, 605 F. Supp. 3d 511, 518 (W.D.N.Y. 2022); *Dasler v. Knapp*, No. 2:21-CV-135, 2023 WL 8354441, \*9 (D. Vt. Oct. 13, 2023).

Plaintiffs are correct that abstention is usually exercised in scenarios where significant state interests are at stake. *See* Dkt. No. 13 at 6; *see also Sprint, 571 U.S. at 72-73*. This is such a case because states are traditionally tasked with addressing domestic matters. *See Deem, 941 F.3d at 624* (quoting *In re Burrus*, 136 U.S. 586, 593-94 (1890)) ("[T]he existence of a distinct abstention doctrine for certain domestic relations disputes is supported by the Supreme Court's longstanding recognition — in a non-diversity case involving a child custody dispute — that '[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States' "); *see also Amato v. McGinty*, No. 1:17-CV-593, 2017 WL 9487185, \*10 (N.D.N.Y. June 6, 2017). Thus, the Court will abstain from exercising jurisdiction over Plaintiffs' complaint insofar as it concerns state court domestic relations matters.

### C. RICO Claims

Magistrate Judge Stewart concluded that Plaintiffs failed to set forth a cognizable claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, because, as explained in *Kim v. Kimm*, 884 F.3d 98 (2d Cir. 2018), RICO cannot be used to address litigation activity. *See* Dkt. No. 12 at 11-14. Plaintiffs object, arguing that *Kim* is inapplicable because that case involved a single instance of litigation activity, whereas their case concerns "actions [that] have been concertedly executed over a period of four years." Dkt. No. 13 at 7. Plaintiffs rely on Fifth and Eleventh Circuit caselaw to argue that their claims support a RICO violation. *See id.* at 6-7. Plaintiffs also contend that Magistrate Judge Stewart's decision supports their assertion of corruption in the judiciary because he took sixty-nine days to issue his Report-Recommendation and Order "as opposed to the swifter resolutions typically observed in cases under the same magistrate." *Id.* at 8.

As an initial matter, Plaintiffs' reliance on out-of-circuit case law is not binding on this Court. *See Goldstein v. Pro. Staff Cong./CUNY*, 643 F. Supp. 3d 431, 443, n.6 (S.D.N.Y. 2022), *aff'd*, 96 F.4th 345 (2d Cir. 2024) (discussing "vertical stare decisis"). Further, the Court finds no error in the time Magistrate Judge Stewart took to issue his Report-Recommendation and Order. Magistrate Judge Stewart was tasked with reviewing a 170-page complaint and a forty-eight-page RICO statement. *See* Dkt. Nos. 1, 9. A two-month time frame to do so is not inappropriate, let alone conspiratorial, where Magistrate Judge Stewart must balance a heavy case load.

**\*5** As to the substance of Plaintiffs' RICO claims and their objections, Plaintiffs are correct that *Kim* concerned one federal litigation alleged to be conspiratorial. *See Kim*, 884 F.3d at 101-02. In that case, the Second Circuit specifically "decline[d] to reach the issue of whether all RICO actions based on litigation activity are categorically meritless." *Id.* at 105. Rather, the Second Circuit held only that "where ... a plaintiff alleges that a defendant engaged in a single frivolous, fraudulent, or baseless lawsuit, such litigation activity alone cannot constitute a viable RICO predicate act." *Id.*

The Second Circuit distinguished *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413 (S.D.N.Y. 2010) wherein the court allowed a RICO claim to proceed because the plaintiff pled "a pattern of racketeering activity that included 'at least twenty allegedly fraudulent statements and eighteen acts involving use of the mail and wires over three years, in furtherance of the alleged fraud.' " *Kim*, 884 F.3d at 105

(quoting *Sykes*, 757 F. Supp. 2d at 425). This court has also noted that "the Second Circuit decision in *United States v. Eisen*, 974 F.2d 246 (2d Cir. 1992), allows RICO claims based on abusive litigation tactics involving conduct external to any of the particular disputes between the litigants in improperly filed and litigated civil actions." *Carroll v. U.S. Equities Corp.*, No. 1:18-CV-667, 2020 WL 11563716, *9 (N.D.N.Y. Nov. 30, 2020).

The Court concludes that *Kim* does not automatically preclude Plaintiffs' purported RICO claim just because Plaintiffs' complaint concerns litigation activity as the alleged activity is conduct occurring over four years and dozens of individuals. However, Magistrate Judge Stewart did not state that such preclusion was automatic. Rather, he applied the "reasons" and "principle[s]" set forth by *Kim* to Plaintiffs' complaint. Dkt. No. 12 at 12-13. The Court agrees with such application.

"To state a claim for RICO conspiracy under § 1962(d), the plaintiff must also 'allege the existence of an agreement to violate RICO's substantive provisions.' " *Butcher v. Wendt*, 975 F.3d 236, 241 (2d Cir. 2020) (quoting *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018)); *see also First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 164 (2d Cir. 2004) (concluding that where the plaintiffs failed to "adequately allege a substantive violation of RICO," the district court properly dismissed allegations of "a RICO conspiracy in violation of 18 U.S.C. § 1962(d)"); *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1996), *as corrected*, 93 F.3d 1055 (2d Cir. 1996) ("Since we have held that the prior claims do not state a cause of action for substantive violations of RICO, the present claim does not set forth a conspiracy to commit such violations").

"To state a claim of a substantive RICO violation under § 1962(c), a plaintiff must allege, among other things, two or more predicate acts 'constituting a pattern' of 'racketeering activity.' " *Butcher*, 975 F.3d at 241 (quoting *Williams*, 889 F.3d at 124). "The RICO statutory scheme defines 'racketeering activity' to include 'a host of criminal offenses, which are in turn defined by federal and state law.' " *Curtis & Assocs., P.C. v. L. Offs. of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 168 (E.D.N.Y. 2010), *aff'd*, 443 Fed. Appx. 582 (2d Cir. 2011) (quoting *Cofacredit, S.A. v. Windsor Plumbing Supply Co. Inc.*, 187 F.3d 229, 242 (2d Cir. 1999)). "Specifically, the RICO statute defines 'racketeering activity' as including any 'act' indictable under various specified federal statutes, including the mail and wire fraud statutes."

*Id.* (quoting 18 U.S.C. § 1961(1)). " 'Pattern' is defined by the statute as 'at least two acts of racketeering activity' within a ten-year period." *Id.* (quoting 18 U.S.C. § 1961(5)).

**\*6** In their RICO statement, Plaintiffs allege that Defendants violated 18 U.S.C. §§ 1341 (relating to mail fraud), 1343 (relating to wire fraud), 1344 (relating to financial institution fraud), 1503 (relating to financial institution fraud), 1510 (relating to obstruction of criminal investigations), 1513 (relating to retaliating against a witness, victim, or an informant), and 1951 (relating to interference with commerce, robbery, or extortion). *See* Dkt. No. 9 at 18-19.

Plaintiffs' complaint and statement fail to sufficiently allege these predicate acts. Plaintiffs allege that Defendants committed mail fraud "by a series of fraudulent support collection letters" which "were issued despite knowledge of fraud and without proper investigation into the claims." Dkt. No. 9 at 22. They contend that Defendants committed wire fraud and financial institution fraud by sending bills and enforcing child support collection orders. *See id.* Plaintiffs state that they have been mailed fraudulent protection orders. *See id.* at 23. They aver that they were e-mailed "fraudulent legal documents including affirmations, affidavits, and protection orders." *Id.* at 25. Plaintiffs also allege that "Defendants each obstructed justice by interfering in state court matters ostensibly to undermine the plaintiffs' federal court case and hinder U.S. attorneys' investigations." *Id.* at 19. They state that Defendants have obstructed justice by "tampering with trial proceedings and witnesses, failing to file pertinent motions into the court record, and deliberately withholding compliance with legally mandated FOIL requests." *Id.* at 20-21. Plaintiffs allege that Defendants "engaged in coercive and illicit practices to extort payments from the plaintiff. The purported extortion involved the utilization of duress, public denigration, threats of incarceration, the manipulation of child custody, tolerance of ongoing abuse, initiation of vindictive charges and protective orders, unlawful intimidation, and the fabrication of federal crime accusations." *Id.* at 21.

Although *Kim* concerned only a single litigation, the principles underlying the Second Circuit's decision are applicable to Plaintiffs' claims because their claims stem entirely from state family and criminal court proceedings. Allowing such claims to be the base underlying RICO violations "would erode the principles undergirding the doctrines of res judicata and collateral estoppel, as such claims frequently call into question the validity of documents

presented in the underlying litigation as well as the judicial decisions that relied upon them." *Kim*, 884 F.3d at 104 (quotation omitted).

The allegations in Plaintiffs' complaint and RICO statement are similar to those in cases which have not allowed a RICO claim to proceed where the allegations concern only litigation activity. Plaintiffs have not alleged any conduct that is unrelated to state-court litigation. *See Wang v. Yien-Koo King*, No. 18-CV-8948, 2019 WL 1763230, *7 (S.D.N.Y. Apr. 22, 2019) ("[B]ecause the Court has held that [the p]laintiffs have not adequately alleged RICO claims premised on the sale of restrained artwork or the proceedings in probate court, [the p]laintiffs' RICO claim would be rooted solely in litigation-related mail or wire fraud predicates -- specifically, the use of mail and wires in filing legal documents"); *Weaver v. New York State Off. of Ct. Admin.*, No. 22-CV-559, 2023 WL 2500390, *9 (N.D.N.Y. Mar. 14, 2023); *Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 69 (E.D.N.Y. 2020); *Robinson v. Vigorito, Barker, Patterson, Nichols & Porter, LLP*, No. 19-CV-2914, 2019 WL 13417190, *3 (E.D.N.Y. July 31, 2019); *Verschleiser v. Frydman*, No. 22-CV-7909, 2023 WL 5835031, *13 (S.D.N.Y. Sept. 7, 2023) (citing, *inter alia, Curtis & Assocs., P.C. v. L. Offs. of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 174 (E.D.N.Y. 2010); *Daddona v. Gaudio*, 156 F. Supp. 2d 153, 161-62 (D. Conn. 2000)).

*7 Plaintiffs' complaint is also distinguishable from cases where RICO claims have been permitted to proceed. For example, in *Carroll*, the plaintiff alleged that the defendants initiated thousands of lawsuits against the plaintiff and unnamed individuals for fraudulent debts in order to recover monetary default judgments. *Carroll*, 2020 WL 11563716, at *3. The court noted that many acts as alleged by the plaintiff "involved matters beyond proper legal representation and went beyond any of the particular disputes between the litigants" "such as buying uncollectable debts that lacked proof that the debts were owed, conspiring to use a process serving firm that engaged in sewer service to ensure that defendants would not contest the debt-collection actions, using an individual who filed false affidavits of merit in every case, and pressuring defendants to compromise on illegally obtained default judgments were actions external to the individual suits in the state courts." *Id.* at *9. The court concluded that the "case is more closely aligned with *Sykes* than *Kim*." *Id.* In *Sykes*, "[t]he gravamen of [the] racketeering activity was not so much litigation activities, as it was the use of courts to obtain default judgments en masse against defendants who had not been served. The 'litigations' in

*Sykes* were mere perfunctory steps to cash in on a portfolio of defaulted debts." *Rajaratnam*, 449 F. Supp. 3d at 71; *see Sykes*, 757 F. Supp. 2d at 425.

Here, the gravamen of Plaintiffs' complaint concerns state court litigation. There are no allegations in either the complaint or RICO statement that are entirely unrelated to litigation. The Defendants are judges, attorneys, law firms, or the mother of Plaintiff Smith's children—who is the primary adversary in the state court cases. Allowing a RICO violation to proceed under these circumstances would, as the Second Circuit cautioned against, " 'chill litigants and lawyers and frustrate the well-established public policy goal of maintaining open access to the courts' because 'any litigant's or attorney's pleading and correspondence in an unsuccessful lawsuit could lead to drastic RICO liability.' " *Kim*, 884 F.3d at 105 (quotation omitted). Thus, the Court concludes that Plaintiffs' complaint fails to state a cognizable RICO claim.

### D. Absolute Judicial Immunity

Plaintiffs seek to bring claims under 42 U.S.C. §§ 1983 and 1985 for alleged constitutional violations against numerous state court judges: Defendants Paul Pelagalli, John Ellis, Jeffrey Wait, Felix Catena, Dianne Freestone, James Murphy, and Elizabeth Garry. *See* Dkt. No. 1 at ¶¶ 24-47. Magistrate Judge Stewart correctly explained that judges are typically immune from such actions. *See* Dkt. No. 12 at 14. Plaintiffs object, arguing that the judicial Defendants' conduct, as outlined in the complaint, constitutes "a significant departure from their judicial responsibilities." Dkt. No. 13 at 11.

"Absolute immunity for judges is 'firmly established' for acts 'committed within their judicial jurisdiction.' " *Peoples v. Leon*, 63 F.4th 132, 138 (2d Cir. 2023) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985)). "Absolute immunity for a judge performing his or her judicial functions is conferred in order to insure 'that a judicial officer, in exercising the authority vested in him shall be free to act upon his own convictions, without apprehension of personal consequences to himself.' " *Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 123 (2d Cir. 2020), *abrogated on other grounds by New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) (quoting *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009)). "Entitlement to absolute immunity does not depend on the individual's title or on the office itself.... A judge may perform tasks that are not essentially judicial, such as supervising and managing court employees, which do not warrant absolute immunity ...; on the other hand, such

immunity may be warranted for a person who is not a judge but whose duties are quasi-judicial." *Id.* at 124 (citations omitted). "Judicial acts principally involve adjudication of particularized, existing issues." *Id.* "Thus, some functions may be viewed as judicial acts when performed in the context of a particular case but as administrative when performed for the purpose of overall management in anticipation of future cases." *Id.*

**\*8** "In determining a jurisdictional issue that depended on 'whether a particular proceeding before another tribunal was truly judicial,' ... the Supreme Court stated that the form of the proceeding is less significant than the proceeding's nature and effect." *Id.* (quoting *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 n.13, 478 (1983)). "Judicial immunity is overcome in only two circumstances: (1) 'a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity'; and (2) 'a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.' " *McCluskey v. Roberts*, No. 20-4018, 2022 WL 2046079, \*5 (2d Cir. June 7, 2022) (quoting *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991)).

Plaintiffs' allegations against the judicial Defendants stem entirely from the judge's orders and decisions or conduct in controlling their courtroom. *See* Dkt. No. 1 at ¶¶ 24-47. Although Plaintiffs disagree with the judge's actions or inactions related to protective orders, custody orders, and court proceedings, those actions are entirely within the scope of the judges' jurisdiction. Plaintiffs have not presented more than conclusory allegations to establish that the judicial Defendants were acting absent all jurisdiction. They are, therefore, entitled to absolute immunity for that conduct. *See, e.g.*, *King v. New York State*, No. 23-CV-3421, 2023 WL 5625440, \*4 (E.D.N.Y. Aug. 31, 2023); *Wilkins v. Soares*, No. 8:20-CV-00116, 2020 WL 5238598, \*4 (N.D.N.Y. May 27, 2020); *Viola v. Bryant*, No. 3:17-CV-00853, 2017 WL 2676407, at \*4 (D. Conn. June 21, 2017); *Topolski v. Wrobleski*, No. 5:13-CV-0872, 2014 WL 2215761, \*5 (N.D.N.Y. May 29, 2014).

### *1. Sovereign Immunity*

As an alternative to absolute judicial immunity, Magistrate Judge Stewart explained in a footnote that the judicial Defendants were also protected by sovereign immunity. *See* Dkt. No. 12 at 18, n.3. Plaintiffs object to the application of sovereign immunity because "their allegations are distinctly

targeted at the defendants in their personal capacities." Dkt. No. 13 at 21.

"The Eleventh Amendment states: 'The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.' " *Gollomp v. Spitzer*, 568 F.3d 355, 365 (2d Cir. 2009) (quoting U.S. Const. amend. XI). "[T]he Eleventh Amendment means that, 'as a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity,' or unless Congress has 'abrogate[d] the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment.' " *Id.* at 366 (quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006)).

"The Unified Court System, or 'UCS,' is the name for the entire New York State judiciary." *T.W. v. New York State Bd. of L. Examiners*, 996 F.3d 87, 95 (2d Cir. 2021). "[A] lawsuit against the Unified Court System is 'in essence one for the recovery of money from the state, [so that] the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit.' " *Gollomp*, 568 F.3d at 368 (quotation omitted). As Magistrate Judge Stewart explained, the Second Circuit has recently reaffirmed the application of Eleventh Amendment sovereign immunity to New York State judges. *See* Dkt. No. 12 at 18, n.3 (citing *Bythewood v. New York*, No. 22-CV-2542, 2023 WL 6152796, \*1 (2d Cir. Sept. 21, 2023) ("We agree with the district court that Bythewood's claims against the State of New York and the Judicial Defendants are barred by Eleventh Amendment sovereign immunity")).

**\*9** As the Court has already concluded that the judicial Defendants were acting within their roles as judges, the Court concludes that they are entitled to sovereign immunity. To the extent Plaintiffs argue that they seek to sue the judicial Defendants in only their individual capacities, such claims "are [ ] barred by absolute judicial immunity." *Bythewood*, 2023 WL 6152796, at \*2.

### *2. Court Attorney*

Magistrate Judge Stewart concluded that Defendant Karla Conway, Judge Pelagalli's court attorney, is also entitled to absolute judicial immunity. *See* Dkt. No. 12 at 19. In Plaintiffs' objections, they state that Conway was "acting beyond her judicial capacity and outside her jurisdiction by

orchestrating these unauthorized hearings and issuing void orders when she had no legal authority to do so." Dkt. No. 13 at 14.

Law clerks and court attorneys are entitled to absolute immunity. *See Jackson v. Pfau*, 523 Fed. Appx. 736, 737-38 (2d Cir. 2013) (affirming dismissal of Section 1983 claims against judicial law clerk, the N.Y.S. Chief Administrative Judge, court attorneys, and the Chief Clerks of several state courts, finding that the "defendants were entitled to judicial immunity[ ] because [the] allegations against each of them concerned actions that were judicial in nature or closely related to the judicial process"); *see also Gollomp*, 568 F.3d at 365; *Fishman v. Off. of Ct. Admin. New York State Cts.*, No. 18-CV-282, 2020 WL 1082560, *6 (S.D.N.Y. Mar. 5, 2020), *aff'd*, No. 20-1300, 2021 WL 4434698 (2d Cir. Sept. 28, 2021).

Plaintiffs' allegations against Conway relate solely to "orders and statements in court." Dkt. No. 1 at ¶ 122. Although Plaintiffs argue otherwise, their allegations relate entirely to work performed as an extension of Judge Pelagalli such that Conway is entitled to absolute immunity.

### E. Quasi-Judicial Immunity

Magistrate Judge Stewart next addressed the claims against court-appointed psychologists—Defendants O'Connor and Bashkoff, and court-appointed attorneys for Plaintiff Smith's children—Defendants Carbone, Tastensen, and Corey-Mongue. *See* Dkt. No. 12 at 19-20. Magistrate Judge Stewart concluded that the psychologists and attorneys were entitled to quasi-judicial immunity. *See id.*

Plaintiffs argue that the psychologists should not be entitled to immunity because of "their active participation in a conspiracy." Dkt. No. 13 at 22. Similarly, Plaintiffs contend that the attorneys should not be afforded immunity because of "their repeated violations of constitutional rights and legal statutes." *Id.* at 23. Plaintiffs state that the "attorneys actively campaign and participate in fundraisers for judges who oversee their appointments and approve their billings." *Id.*[2]

[2]    Magistrate Judge Stewart also addressed court-appointed attorney Defendant Tobin. *See* Dkt. No. 12 at 19-20. Plaintiffs clarify that Defendant Tobin was not an attorney for a child. *See* Dkt. No. 13 at 23. Rather, Tobin represented Defendant

Smith. *See* Dkt. No. 1 at ¶¶ 58-59, 162. Insofar as Tobin was retained counsel, "defense attorneys —even if court-appointed or public defenders—do not act under color of State law when performing traditional functions of counsel." *Krug v. McNally*, 488 F. Supp. 2d 198, 200 (N.D.N.Y. 2007), *aff'd*, 368 Fed. Appx. 269 (2d Cir. 2010). Therefore, Plaintiffs' claims against Tobin must be dismissed for failure to plead state action.

 **\*10**  "A private actor may be afforded the absolute immunity ordinarily accorded judges acting within the scope of their jurisdictions if his role is 'functionally comparable' to that of a judge, ... or if the private actor's acts are integrally related to an ongoing judicial proceeding." *Mitchell v. Fishbein*, 377 F.3d 157, 172 (2d Cir. 2004) (quoting *Butz v. Economou*, 438 U.S. 478, 513, (1978); citing *Scotto v. Almenas*, 143 F.3d 105, 111012 (2d Cir. 1998); *Dorman v. Higgins*, 821 F.2d 133, 136-38 (2d Cir. 1987)) (additional quotation marks omitted).

The Second Circuit has affirmed application of quasi-judicial immunity to a "law guardian and her director." *Yapi v. Kondratyeva*, 340 Fed. Appx. 683, 685 (2d Cir. 2009). This is because law guardians or attorneys for children serve "serve[ ] as an 'arm of the court,' or act[ ] as an 'integral part[ ] of the judicial process.' " *Holland v. Morgenstern*, 12-CV-4870, 2013 WL 2237550, *4 (E.D.N.Y. May 20, 2013) (quoting *Scotto v. Almenas*, 143 F.3d 105, 111 (2d Cir. 1998)). The same can be said for court-appointed psychologists. *See Vargas v. Mott*, No. 21-CV-6165, 2022 WL 3236744, *3 (W.D.N.Y. July 13, 2022) ("[P]sychiatrists who perform court-ordered examinations enjoy absolute quasi-judicial immunity"). Because these Defendants were appointed by the court and performing court-related functions, they are afforded quasi-judicial immunity. *See Cherner v. Westchester Jewish Cmty. Servs., Inc.*, No. 20-CV-8331, 2022 WL 596074, *4 (S.D.N.Y. Feb. 28, 2022), *aff'd* No. 22-642, 2022 WL 17817882 (2d Cir. Dec. 20, 2022); *Wilson v. Wilson-Polson*, No. 09-CV-9810, 2010 WL 3733935, *7 (S.D.N.Y. Sept. 23, 2010), *aff'd*, 446 Fed. Appx. 330 (2d Cir. 2011); *Thomas v. Martin-Gibbons*, No. 19-CV-7695, 2020 WL 5026884, *7 (S.D.N.Y. Aug. 25, 2020).

### F. Government Attorney Immunity

Magistrate Judge Stewart addressed the immunity typically afforded to government attorneys when acting as an advocate of a state. *See* Dkt. No. 12 at 21. He concluded that such immunity should apply to Defendants Samuel Maxwell, Emily Williams, Michelle Granger, and Michael Hartnett

as district and county attorneys. *See id.* Plaintiffs contend that Defendants William and Maxwell are not entitled to immunity because they engaged in malicious prosecution. *See* Dkt. No. 13 at 23-24. As to Hartnett and Granger, Plaintiffs argue that immunity should not be afforded because their "alleged conduct represents a severe misuse of their positions and constitutes active participation in a broader conspiracy to violate the plaintiffs' rights." *Id.* at 25. Plaintiffs assert that the attorneys requested illegal protective orders, withheld evidence, revoked Plaintiff Smith's drivers license, and refused to investigate Plaintiffs' allegations of fraud. *See id.* at 23-25.

"Absolute immunity protects government officials from suit arising out of acts associated with their 'function as an advocate.' " *Jeanty v. Sciortino*, 669 F. Supp. 3d 96, 108 (N.D.N.Y. 2023) (quoting *Buari v. City of New York*, 530 F. Supp. 3d 356, 378 (S.D.N.Y. 2021)). "Absolute immunity extends to 'government attorneys defending civil suits' and 'government attorneys who initiate civil suits.' " *Id.* (quoting *Spear v. Town of West Hartford*, 954 F.2d 63, 66 (2d Cir. 1992)). "In determining whether an official is entitled to absolute immunity, courts employ a 'functional' approach, 'looking at "the nature of the function performed, not the identity of the actor who performed it." ' " *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 394 (2d Cir. 2006)) (additional quotation omitted). "The principle applies to 'functions of a government attorney "that can fairly be characterized as closely associated with the conduct of litigation or potential litigation" in civil suits—including the defense of such actions.' " *Id.* (quotations omitted). " '[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused.' " *Id.* (quoting *Bernard v. County of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004)).

**\*11** "Post-arraignment, pre-trial 'acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity.' " *Werkheiser v. Cnty. of Broome*, 655 F. Supp. 3d 88, 101 (N.D.N.Y. 2023) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). "In contrast, pre-arraignment actions—such as interviewing a witness to obtain probable cause for an arrest—are not entitled to the protections of absolute immunity." *Id.* (citing *Hill v. City of New York*, 45 F.3d 653, 658, 661 (2d Cir.

1995)). "Additionally, 'absolute immunity may not apply when a prosecutor is not acting as "an officer of the court," but is instead engaged in other tasks, say, investigative or administrative tasks.' " *Id.* (quoting *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009)) (additional quotation omitted). "Investigative tasks beyond the scope of absolute immunity are those 'normally performed by a detective or police officer.' " *Id.* at 102 (quoting *Buckley*, 509 U.S. at 273).

Plaintiffs' allegations against government attorneys stem entirely from these Defendants' functions as counsel for the state. *See* Dkt. No. 1 at ¶¶ 67-71. These Defendants are entitled to absolute immunity for such conduct, even where Plaintiffs contend that the conduct was improperly motivated or "unbecoming." Dkt. No. 13 at 23; *see also Bernard*, 356 F.3d at 504 ("Where ... a prosecutor's charging decisions are not accompanied by any such unauthorized demands, the fact that improper motives may influence his authorized discretion cannot deprive him of absolute immunity"). Moreover, Plaintiffs' allegations of a conspiracy do not save these claims. *See Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1148 (2d Cir. 1995) (quotations omitted) ("As this Court and others circuits have repeatedly held, since absolute immunity covers 'virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate,' ... when the underlying activity at issue is covered by absolute immunity, the 'plaintiff derives no benefit from alleging a conspiracy' "). Thus, the claims against government attorneys are dismissed.

**G. Witness Immunity**

Plaintiffs' complaint alleges constitutional violations based on various Defendants providing testimony. Magistrate Judge Stewart recommended dismissing any such claims based on absolute witness immunity. *See* Dkt. No. 12 at 22-23. Plaintiffs object, "grounding their objection in the assertion that the corruption, conspiracy, and collusion among the defendants have led to fraudulent activities within court proceedings." Dkt. No. 13 at 26.

"It is well established that testifying witnesses, including police officers, are entitled to absolute immunity from liability under [Section] 1983 based on their testimony." *Rolan v. Henneman*, 389 F. Supp. 2d 517, 519 (S.D.N.Y. 2005) (citing *Briscoe v. LaHue*, 460 U.S. 325 (1983)) (collecting cases). "As explained in *Briscoe*, absolute immunity for witness testimony in [Section] 1983 cases is rooted in the belief that '[a] witness's apprehension of subsequent damages liability might induce two forms of self-censorship." *Id.*

"First, witnesses might be reluctant to come forward to testify. And once a witness is on the stand, his testimony might be distorted by the fear of subsequent liability.' " *Id.* (quoting *Briscoe*, 460 U.S. at 333). "Such absolute immunity applies to witnesses, 'whether governmental, expert, or lay witnesses' in Family Court proceedings." *Santos v. Syracuse Police Dep't*, No. 5:22-CV-1102, 2022 WL 16949542, *7 (N.D.N.Y. Nov. 15, 2022) (quoting *Storck v. Suffolk Cnty. Dep't of Soc. Servs.*, 62 F. Supp. 2d 927, 945 (E.D.N.Y. 1999)).

"In this Circuit, however, absolute witness immunity does not extend to allegations of conspiracy." *Cipolla v. Cnty. of Rensselaer*, 129 F. Supp. 2d 436, 451 (N.D.N.Y.), aff'd, 20 Fed. Appx. 84 (2d Cir. 2001) (citing *Dory v. Ryan*, 999 F.2d 679 (2d Cir. 1994); *San Filippo v. U.S. Trust Co.*, 737 F.2d 246, 254 (2d Cir. 1984)); *see also Coggins v. Buonora*, 362 Fed. Appx. 224, 225 (2d Cir. 2010). The Supreme Court, in *Rehberg v. Paulk*, 566 U.S. 356 (2012), "held that grand jury witnesses, like trial witnesses, are entitled to absolute immunity if a plaintiff's claim is based on their allegedly perjurious testimony." *Gonzalez v. Baart*, No. 5:21-CV-01379, 2023 WL 8818302, *3 (N.D.N.Y. Dec. 20, 2023). The Supreme Court stated that "this rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution." *Rehberg*, 566 U.S. at 369. "Courts have distinguished presenting false testimony and soliciting false testimony from others and creating fabricated evidence." *Gonzalez*, 2023 WL 8818302, at *4 (collecting cases).

**\*12** Plaintiff contends that psychological reports that were used as evidence during hearings were false or unfinished, and that various Defendants either refrained from testifying or testified falsely. *See* Dkt. No. 1 at ¶¶ 93-94, 96, 98, 100-01, 127, 162, 186, 190. Insofar as Plaintiffs allege that witnesses testified falsely, such testimony is protected by absolute immunity. To the extent Plaintiffs allege that some of the Defendants conspired to present false testimony, the claims might not automatically be subject to dismissal on witness immunity grounds. *See Cipolla*, 129 F. Supp. 2d at 451; *Gonzalez*, 2023 WL 8818302, at *4. However, Plaintiffs have not provided enough information concerning non-testimonial actions used to create fabricated testimony, beyond their assertions of a conspiracy-at-large. Even assuming not all witness Defendants are entitled to absolute immunity, the claims must be dismissed for failure to sufficiently plead state action or a conspiracy.

## H. State Action

Plaintiffs bring their suit against numerous private parties, including Defendant Smith, Plaintiff Smith's stepfather and mother, a nurse, and private lawyers and law firms. *See* Dkt. No. 1 at ¶¶ 82-89, 99-111. Magistrate Judge Stewart recommended that those claims be dismissed because the private Defendants are not state actors: a prerequisite to bringing Section 1983 and 1985 claims. *See* Dkt. No. 12 at 24-25. Plaintiffs object to that conclusion because the private individuals "orchestrated their actions in unison with state actors." Dkt. No. 13 at 27.

" 'Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action.' " *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (quoting *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005)). " 'A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is thus required to show state action.' " *Id.* (quoting *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003)). " '[S]tate action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." ' " *Id.* (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)) (additional quotation omitted). " 'Conduct that is formally "private" may become so entwined with governmental policies or so impregnated with a governmental character that it can be regarded as governmental action.' " *Id.* (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 847 (1982)).

" 'To state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act.' " *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (quoting *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992)). "Put differently, a private actor acts under color of state law when the private actor 'is a willful participant in joint activity with the State or its agents.' " *Id.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). "A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Id.*

Plaintiffs state in their objections that the attorneys for the children conspired with state actors because their hours are approved by the state court judicial Defendants and their positions are dependent on state funding. *See* Dkt. No. 13 at 28-29. Plaintiffs contend that they "personally observed 'meetings of the mind' occurring during off [the] record court proceedings and informal gatherings, like lunches, where conspiratorial strategies were devised and later executed in court." *Id.* at 29.

**\*13** These contentions and the allegations in Plaintiffs' complaint are insufficient to hold the private Defendants out to be state actors. It is well-settled that " '[t]he fact that a private entity uses the state courts does not transform the private party into a state actor.' " *Rice v. City of New York*, 275 F. Supp. 3d 395, 403-04 (E.D.N.Y. 2017) (quoting *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 516 (S.D.N.Y. 2016)); *see also Malave-Sykes v. Endicott Police Dep't*, No. 3:23-CV-1215, 2023 WL 6847684, \*5 (N.D.N.Y. Oct. 17, 2023) (quotation omitted) ("[P]roviding false information to the police does not make a private individual a state actor and liable under § 1983' "); *Parent v. New York*, 786 F. Supp. 2d 516, 538 (N.D.N.Y. 2011), *aff'd*, 485 Fed. Appx. 500 (2d Cir. 2012) ("[A]lthough appointed by the state, an attorney for the children or law guardian is not a state actor because he or she must exercise independent professional judgment on behalf of the clients they represent"); *Milan v. Wertheimer*, 808 F.3d 961, 962-64 (2d Cir. 2015) (affirming dismissal of claims against children's grandmother for initiating protective services investigations because grandmother was not a state actor).

Because Plaintiffs have stated no more than conclusory allegations that the private Defendants conspired with state actors, the Court dismisses the complaint against those private Defendants for failure to state a claim under Section 1983.

### I. Affirmative Duty

In Magistrate Judge Stewart's Report-Recommendation and Order, he next addressed Plaintiffs' claims against Saratoga County police officers, county departments of social services, and school district administrators. *See* Dkt. No. 12 at 26-30. Magistrate Judge Stewart summarized the allegations against those various entities and individuals as resting on the failure "to better intervene and prevent misconduct of private parties against [Plaintiffs] or the Smith children." *Id.* at 28. He explained, however, that the Supreme Court has rejected

claims of an affirmative duty to act under Section 1983. *See id.* at 28-29 (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 192 (1989); *Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 768-69 (2005)).

Plaintiffs object and "express confusion and disagreement with Magistrate [Judge] Stewart's ruling, which concluded that the officers had no affirmative duty, a decision that contradicts the policies stated by the plaintiffs in their original complaint." Dkt. No. 13 at 30. Plaintiffs "characterize" the police officers' conduct "as a sustained campaign of retaliation and a persistent failure to provide protection, spanning four years." *Id.* at 32. Plaintiffs also "highlight Magistrate [Judge] Stewart's failure to assert qualified immunity for the officers as further evidence that their claims warrant progression in the legal process. This stance underscores their belief in the seriousness of their allegations and the need for judicial scrutiny of the officers' actions." *Id.* at 31.

First, there is no requirement that a court address every single potential ground for dismissal where it is clear that a claim should be dismissed. *See, e.g.*, *Curtis v. Greenberg*, No. 22-252-CV, 2023 WL 6324324, \*2, n.3 (2d Cir. Sept. 29, 2023) ("Because we affirm the dismissal of the RICO claims based on the failure to adequately plead a RICO enterprise, we need not address the district court's alternative grounds for dismissal"); *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 441 (N.D.N.Y. 2009) ("[B]ecause the Court has found adequate grounds on which to adopt Magistrate Judge Lowe's Report-Recommendation, ... the Court does not address th[e] alternative recommendation ...."). Therefore, the Court takes no issue with Magistrate Judge Stewart's decision not to address qualified immunity.

**\*14** Second, it is well settled that police officers do not have an affirmative duty to investigate alleged crimes to the extent and in the way that a complainant or arrestee requests. *See Buari*, 530 F. Supp. 3d at 389 (quotation omitted) (" '[A] police officer's failure to pursue a particular investigative path is not a constitutional violation' "); *Brown v. City of New York*, No. 12-CV-3146, 2014 WL 5089748, \*5 (S.D.N.Y. Sept. 30, 2014) ("Police officers do not have an affirmative duty to investigate allegations made by a complaining witness prior to effectuating an arrest"); *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) ("Although a better procedure may have been for the officers to investigate plaintiff's version of events more completely, the arresting officer does not have to prove plaintiff's version wrong before arresting him.... Nor does it

matter that an investigation might have cast doubt upon the basis for the arrest").

Third, insofar as Plaintiffs allege that the officers violated their First Amendment rights, there are insufficient allegations in Plaintiffs' complaint to state such a claim. *See* Dkt. No. 13 at 31; *see also* Dkt. No 1. Plaintiffs summarily allege that Defendant police officers brought false charges and protection orders against Plaintiffs in retaliation for Plaintiffs' "legal challenges against governmental grievances." Dkt. No 1 at ¶ 250. Plaintiffs' contention that "the officers" retaliated against them by "levying fraudulent harassment charges," Dkt. No. 13 at 31, cannot stand because criminal charges are brought by a prosecutor, not police officers. *See Mortimer v. Wilson*, No. 15-CV-7186, 2020 WL 3791892, *8-9 (S.D.N.Y. July 7, 2020).

As to social services and the school district, Plaintiffs contend that "[i]ndividuals in these positions are expected to respond to, and report, any instances of wrongdoing, unethical behaviors, or legal violations." Dkt. No. 13 at 32. Specifically, Plaintiffs rely on a school or administrator's mandatory reporting requirements for suspected child abuse. *See id.* at 33.

As Magistrate Judge Stewart aptly explained, "[a]lthough New York State law requires that mandated individuals report instances of suspected child abuse or maltreatment, such reporting is not constitutionally required." Dkt. No. 12 at 30. In other words, violation of a state law does not create a cognizable Section 1983 claim. *See Jackson v. Pfau*, No. 9:10-CV-1484, 2011 WL 13127988, *15 (N.D.N.Y. May 12, 2011), *aff'd*, 523 Fed. Appx. 736 (2d Cir. 2013) ("[A] Section 1983 claim brought in federal court is not the appropriate forum to assert violations of state law or regulations"). Thus, the Court agrees with Magistrate Judge Stewart that Plaintiffs' claims concerning a school's mandatory reporting obligations does not create a cognizable Section 1983 claim. As such, those claims are dismissed.

## J. *Monell* and Supervisory Liability

Plaintiffs seek to bring municipal and supervisory liability, or *Monell*, claims in count nine of their complaint. *See* Dkt. No. 1 at ¶¶ 267-73. Magistrate Judge Stewart addressed Plaintiffs' *Monell* claims. *See* Dkt. No. 12 at 30-31. He noted that Plaintiffs are required to plead that each Defendant violated the Constitution through their own acts and that Plaintiffs failed to do so. *See id.* at 31. Magistrate Judge Stewart also explained that because Plaintiffs failed to state any underlying

constitutional violations, the *Monell* claims were required to be dismissed. *See id.*

Plaintiffs objected and listed the ways in which they believe their complaint established *Monell* liability. *See* Dkt. No. 13 at 33-34. In doing so, Plaintiffs contend that their constitutional rights were violated through every possible route for supervisory liability: "a specific policy," "actions undertaken by policymaking officials," "pervasive practices by subordinate officials," and "a notable failure by these policymakers to adequately train or supervise municipal employees." *Id.* at 34.

**\*15**  " 'It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Forrest v. Cnty. of Greene*, 676 F. Supp. 3d 69, 78 (N.D.N.Y. 2023) (quoting *Johnson v. Miller*, No. 9:20-CV-622, 2020 WL 4346896, *9 (N.D.N.Y. Jul. 29, 2020)). "As to supervisory liability, there is no 'special test,' and 'a plaintiff must plead and prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." ' " *Id.* (quoting *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020)) (additional quotation omitted). " 'To establish a violation of § 1983 by a supervisor, as with everyone else, then, the plaintiff must establish a deliberate, intentional act on the part of the defendant to violate the plaintiff's legal rights.' ... It is not sufficient to plead that an official was 'conceivably personally involved.' " *Id.* (quoting *Tangreti*, 983 F.3d at 615-16, 618). " '*Tangreti* makes clear that, after *Iqbal*, [a p]laintiff can no longer succeed on a § 1983 claim against [a d]efendant by showing that a supervisor behaved knowingly or with deliberate indifference that a constitutional violation would occur at the hands of his subordinates, unless that is the same state of mind required for the constitutional deprivation.' " *Lalonde v. City of Ogdensburg*, 662 F. Supp. 3d 289, 322 (N.D.N.Y. 2023) (quotation, quotation marks, and emphasis omitted); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

" 'Thus, an official's conduct in making and executing policy, or failing to make or execute policy, may satisfy *Iqbal*'s requirement of personal involvement if such conduct meets the elements required to establish an underlying constitutional violation and is undertaken with the required state of mind.' " *Lalonde*, 662 F. Supp. 3d at 322 (quotation omitted). Importantly, "if the plaintiff cannot show that his or her constitutional rights were violated by any individual defendants, the *Monell* claim will also fail." *Oliver v. City*

*of New York*, 540 F. Supp. 3d 434, 436 (S.D.N.Y. 2021); *see also Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct").

Plaintiff's contentions closely track the pre-*Tangreti* standards for supervisory liability. *See Hendrix v. Annucci, et al.*, No. 9:20-CV-0743, 2021 WL 4405977, *6 (N.D.N.Y. Sept. 27, 2021) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)) ("[T]he Second Circuit's general rule was that a supervisory official's personal involvement could have been proven by showing any five factors: '(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring' "). Plaintiffs' complaint does not set forth personal involvement in a constitutional violation against every single Defendant.

Regardless, Plaintiffs' *Monell* claims cannot proceed because their underlying constitutional claims fail for the reasons set forth in this decision—abstention, immunity, lack of state action, and failure to state a claim. *See Segal*, 459 F.3d at 219. Thus, without underlying constitutional violations, Plaintiffs' *Monell* claims must be dismissed.

### K. ADA and Rehabilitation Act Claims

Plaintiffs set forth an ADA and Rehabilitation Act claim. *See* Dkt. No. 1 at ¶¶ 299-301. Plaintiffs refer to themselves in the plural form when discussing these claims, but it appears that Plaintiff Smith is the individual with alleged disabilities of "ADHD, Auditory Processing Delay, and a Written Learning Disability." *Id.* at ¶ 300; *see also id.* at ¶¶ 178, 185. Plaintiffs allege that Defendant Judge Wait denied Plaintiff Smith "an ADA-complaint note-taker for court hearings" and that Defendant Wait made derogatory and demeaning comments about Plaintiff Smith's disabilities. *See id.* at ¶¶ 178, 185, 300.

**\*16** Magistrate Judge Stewart recommended dismissing these claims as "barred by the *Rooker-Feldman* doctrine, judicial immunity, and by § 1983's requirement that

injunctive relief against a judge is barred unless a declaratory decree was violated, or declaratory relief was unavailable." Dkt. No. 12 at 32. He also noted that neither the ADA nor Rehabilitation act provide for individual liability. *See id.*

Plaintiffs summarily object, stating that the ADA claim does not fall under the *Rooker-Feldman* doctrine and does not qualify for immunity. *See* Dkt. No. 13 at 33. Plaintiffs contend that "the ADA violations were not only discriminatory but also strategic, serving as a means for the defendants to shield themselves from exposure related to their corruption and malfeasance." *Id.*

The Second Circuit has explicitly applied the *Rooker-Feldman* doctrine to ADA claims. *See DiLauria v. Town of Harrison*, 64 Fed. Appx. 267, 270 (2d Cir. 2003). Similarly, "[c]ourts in this Circuit and others have found judicial immunity to extend to claims under the ADA." *Brooks v. Onondaga Cnty. Dep't of Child. & Fam. Servs.*, No. 5:17-CV-1186, 2018 WL 2108282, *4 (N.D.N.Y. Apr. 9, 2018) (collecting cases). Thus, the Court finds no clear error in Magistrate Judge Stewart's applications of these rules of law to Plaintiffs' ADA and Rehabilitation Act claims. [3] Importantly, as Magistrate Judge Stewart explained, and to which Plaintiffs do not respond, "neither statute provides for individual liability." Dkt. No. 12 at 32 (citing *Goe v. Zucker*, 43 F.4th 19, 35 (2d Cir. 2022)); *see also Lalonde v. City of Ogdensburg*, 662 F. Supp. 3d 289, 327 (N.D.N.Y. 2023) (quoting *Fera v. City of Albany*, 568 F. Supp. 2d 248, 259 (N.D.N.Y. 2008)) ("[T]o the extent that Plaintiffs are suing the individual Defendants in their individual capacities, 'neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual liability ....' "). Plaintiffs' ADA and Rehabilitation Act claims are therefore dismissed.

[3]     Insofar as Magistrate Judge Stewart addressed the injunctive relief issue, the Court reiterates Plaintiffs' contention that they do not seek injunctive or declaratory relief, and request only monetary damages.

### L. State Claims

Because Magistrate Judge Stewart recommended dismissing all of Plaintiffs' federal claims, he also recommended dismissing Plaintiffs' state-law claims. *See* Dkt. No. 12 at 32-33. Plaintiffs object, arguing that their federal claims are meritorious and should not be dismissed which would save their state-law claims. *See* Dkt. No. 13 at 35.

It is well settled that the Court is not required to retain jurisdiction over state-law claims if the Court dismisses all federal claims. *See Hyman v. Cornell Univ.*, 834 F. Supp. 2d 77, 83 (N.D.N.Y. 2011), *aff'd*, 485 Fed. Appx. 465 (2d Cir. 2012). Indeed, "[a] district court usually should decline the exercise of supplemental jurisdiction when all federal claims have been dismissed at the pleading stage." *Denny v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006). " 'Dismissal of the pendent state law claims is not, however, "absolutely mandatory" even where the federal claims have been dismissed before trial....' " *Hyman*, 834 F. Supp. 2d at 83 (quoting *Marcus v. AT & T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998)).

All of Plaintiffs' federal claims are subject to dismissal for the reasons set forth in this Memorandum-Decision and Order. As such, the Court declines to exercise jurisdiction over the state-law claims and they too will be dismissed.

**M. Leave to Amend**

**\*17** "[P]laintiffs object to the dismissal of any claims without first being given the opportunity to amend them. As pro se litigants, they request that the court allows them the chance to revise their claims if necessary, emphasizing the importance of this consideration in the context of self-representation." Dkt. No. 13 at 37.

Magistrate Judge Stewart recommended dismissal of Plaintiffs' complaint against the following Defendants with prejudice and without leave to amend: Judge Paul Pelagalli; Saratoga Supreme Court Judges John Ellis and Dianne Freestone; City Court Judge Jeffrey Wait; Saratoga County Court Judge James Murphy; Administrative Judge for the Fourth Judicial District Judge Felix Catena; Appellate Division Justices Elizabeth Garry and Christine Clark; Court Attorney Karla Conway; Court-appointed experts Jaqueline Bashkoff and Dr. Mary O'Connor; the private attorneys appointed by the Court to represent the Smith children - Jessica Vinson of Vella Carbone, LLP; Elena Tastensen; and Heather Corey-Mongue; Samuel Maxwell, Emily Williams, Michelle Granger, Michael Hartnett; Jillian Knox; Veronica Smith; and Denise Rista-Tobin. *See* Dkt. No. 12 at 33-34. Magistrate Judge Stewart recommended as such because the claims against those individuals are barred by judicial, quasi-judicial, government attorney, and/or witness immunities. *See id.* He recommended that Plaintiffs be given leave to amend all other claims. *See id.* at 34-35.

" 'Sua sponte dismissal of *pro se* [ ] petitions which contain non-frivolous claims without requiring service upon respondents or granting leave to amend is disfavored by' " the Second Circuit. *Collymore v. Krystal Myers, RN*, 74 F.4th 22, 27 (2d Cir. 2023) (quoting *Moorish Sci. Temple of Am., Inc. v. Smith*, 693 F.2d 987, 990 (2d Cir. 1982)). "In the § 1983 context, such dismissals are 'inappropriate' – regardless of the merits – if the complaint alleges that '(1) the defendant was a state actor ... when he committed the violation and (2) the defendant deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States.' " *Id.* (quoting *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015)). However, courts often dismiss claims barred by immunity without leave to amend because better pleading cannot cure the deficiency, *i.e.*, amending a complaint does not destroy immunity. *See Clay v. Bishop*, No. 1:22-CV-0983, 2023 WL 3352903, \*7 (N.D.N.Y. Feb. 7, 2023) (collecting cases); *Woods v. Vermont*, No. 2:22-CV-00008, 2023 WL 2624352, \*2 (D. Vt. Mar. 24, 2023); *Burdick v. Town of Schroeppel*, No. 5:16-CV-01393, 2017 WL 5509355, \*9 (N.D.N.Y. Jan. 31, 2017), *aff'd*, 717 Fed. Appx. 92, 93 (2d Cir. 2018).

Because the deficiency in Plaintiffs' claims against judges, court staff, witnesses, government attorneys, and court-appointed individuals are substantive and cannot be cured by better pleading, the Court dismisses those claims with prejudice and without leave to amend. However, the Court will permit Plaintiffs to otherwise amend their complaint. Plaintiffs are informed that any amended complaint will replace the existing complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Jeanty*, 669 F. Supp. 3d at 118. [4]

4     The Court directs Plaintiffs to the instructions outlined in Magistrate Judge Stewart's Report-Recommendation and Order. *See* Dkt. No. 12 at 35-36.

**N. Electronic Filing**

**\*18** Plaintiffs ask that Court "reconsider and override" Magistrate Judge Stewart's decision to deny their request to file electronically. Dkt. No. 13 at 38; *see also* Dkt. No. 12 at 36. Because Plaintiffs' complaint is being dismissed, their request to file electronically is moot. The Court will not reconsider it at this time.

## IV. CONCLUSION

After carefully the Plaintiffs' submissions, Magistrate Judge Stewart's Report-Recommendation and Order, and the applicable law, the Court hereby

**ORDERS** that Magistrate Judge Stewart's Report-Recommendation and Order (Dkt. No. 12) is **ADOPTED in its entirety** for the reasons set forth herein; and the Court further

**ORDERS** that Plaintiffs' complaint (Dkt. No. 1) is **DISMISSED**; and the Court further

**ORDERS** that the claims against Judge Paul Pelagalli; Saratoga Supreme Court Judges John Ellis and Dianne Freestone; City Court Judge Jeffrey Wait; Saratoga County Court Judge James Murphy; Administrative Judge for the Fourth Judicial District Judge Felix Catena; Appellate Division Justices Elizabeth Garry and Christine Clark; Court Attorney Karla Conway; Court-appointed experts Jaqueline Bashkoff and Dr. Mary O'Connor; the private attorneys appointed by the Court to represent the Smith children - Jessica Vinson of Vella Carbone, LLP; Elena Tastensen; and Heather Corey-Mongue; government attorneys Samuel Maxwell, Emily Williams, Michelle Granger, Michael Hartnett; and testifying witnesses Jillian Knox and Veronica Smith be **DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO AMEND**; and the Court further

**ORDERS** that all other claims be **DISMISSED WITHOUT PREJUDICE** with leave to file an amended complaint within thirty (30) days of the date of this Order; and the Court further

**ORDERS** that, if Plaintiffs fail to file an amended complaint within **thirty (30) days** of this Order, the Clerk of the Court shall enter judgment in Defendants' favor and close this case, without further order of this Court; and the Court further

**ORDERS** that Plaintiffs request to reconsider Magistrate Judge Stewart's denial of leave for electronic filing is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court serve a copy of this Order upon Plaintiffs in accordance with Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 2291701

---

Case 1:24-cv-00668-DNH-TWD   Document 12   Filed 11/07/24   Page 52 of 60
Pourzandvakil v. Humphry, Not Reported in F.Supp. (1995)
1995 WL 316935

1995 WL 316935
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Mina POURZANDVAKIL, Plaintiff,

v.

Hubert HUMPHRY, Judisicial Systeam of The State of
Minnesota and Olmested County Court Systeam, and
State of Minnesota, Saint Peter State Hospital, Doctor
Gammel Stephelton, et el Erickson, North West Bank
and Trust, Olmested County Social Service, J.C. Penny
Insurnce, Metmore Finicial, Traveler Insurnce, Comecial
Union Insurnce, Hirman Insurnce, Amrican State
Insurnce, Farmers Insurnce, C. O Brown Insurnce, Msi
Insurnce, Steven Youngquist, Kent Chirstain, Micheal
Benson, United Airline, Kowate Airline, Fordmotor
Cridite, First Bank Rochester, George Restwich,
British Airways, Western Union, Prudenial Insurnce,
T.C.F. Bank, Judge Sandy Kieth, Judge Niergari,
Olmestead County Judgering, Judge Mores, Judge
Jacobson, Judge Challien, Judge Collin, Judge Thomase,
Judge Buttler, Judge Morke, Judge Moweer, Sera
Clayton, Susan Mudhaul, Ray Schmite, Defendants.[1]

Civ. A. No. 94-CV-1594.
|
May 23, 1995.

## Attorneys and Law Firms

Hubert H. Humphrey, III, Atty. Gen. of the State of Minn.,
St. Paul, MN, Jerome L. Getz, Asst. Atty. Gen., of counsel,
for Hubert H. Humphry, III, Judicial System of the State
of Minnesota, St. Peter Regional Treatment Center, Gerald
Gammell, MD, William Erickson, MD, Thomas Stapleton,
MD, the Honorable James L. Mork, Chief Judge Anne
Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge
Dennis Challeen, and Judge Lawrence Collins.

Condon & Forsyth, P.C., New York City, Stephen J. Fearon,
Michael J. Holland, of counsel, for British Airways, P.L.C.
and Kuwait Airways Corp.

Dunlap & Seeger, P.C., Rochester, MN, Gregory J. Griffiths,
of counsel, for Olmsted County, Raymond Schmitz, Susan
Mundahl, Norwest Bank Minnesota, N.A. (the Northwest
Bank & Trust), C.O. Brown Agency, Inc.

Arthur, Chapman, McDonough, Kettering & Smetak, P.A.,
Minneapolis, MN, Eugene C. Shermoen, Jr., of counsel, for
J.C. Penney Ins. Co. and Metropolitan Ins. Co.

Shapiro & Kreisman, Rochester, NY, John A. DiCaro, of
counsel, for Metmor Financial, Inc.

Costello, Cooney & Fearon, Syracuse, Paul G. Ferrara, Robert
J. Smith, of counsel, for Travelers Ins. Companies; Hirman
Ins.; Commercial Union Ins. Companies.

Smith, Sovik, Kendrick & Sugnet, P.C., Syracuse, Thomas
N. Kaufmann, of counsel, for American States Ins. Co. and
Prudential Ins. Co.

Steven C. Youngquist, Rochester, MN, pro se.

Thomas J. Maroney, U. S. Atty., Syracuse, NY, William F.
Larkin, Asst. U. S. Atty., of counsel, for Michael Benson,
Postmaster N. D. of New York.

George F. Restovich & Associates, Rochester, MN, George F.
Restovich, of counsel, for George F. Restovich.

Conboy, McKay, Bachman & Kendall, L.L.P., Watertown, NY,
George K. Myrus, of counsel, for Western Union.

Richard Maki, Rochester, MN, pro se.

## MEMORANDUM-DECISION AND ORDER

POOLER, District Judge.

### INTRODUCTION

**\*1** In the four and one-half months since she filed this
action, plaintiff Mina Pourzandvakil has filed three amended
complaints and ten motions. She also has sought and received
entry of default against ten defendants, none of whom she
properly served. She twice has sought and been denied
temporary restraining orders. She has included in her action
defendants with no apparent connection to this forum, that
were vindicated in actions she brought in other forums.

In response, several individual defendants and groups of
defendants have filed a total of twelve motions, some seeking
vacation of the defaults entered against them, some seeking
dismissal and others seeking both. We grant defendants'
motions insofar as they seek vacation of the clerk's entries of
default and dismissal of the complaint. We vacate *sua sponte*

Case 1:24-cv-00668-DNH-TWD    Document 12    Filed 11/07/24    Page 53 of 60

Pourzandvakil v. Humphry, Not Reported in F.Supp. (1995)

1995 WL 316935

the entries of default against the non-moving defendants. Finally, we dismiss the complaint in its entirety against all defendants.

BACKGROUND

Pourzandvakil commenced this action by filing a complaint in the Office of the Clerk on December 9, 1994 (Docket No. 1). The complaint named as defendants the Attorney General of the State of Minnesota, the State of Minnesota and Olmsted County, Minnesota judicial systems, various Minnesota judges and prosecutors, St. Peter State Hospital in Minnesota and various doctors who worked at St. Peter's. Without specifying the time or defendant involved, the complaint accused the defendants of kidnapping Pourzandvakil and her daughter, torturing Pourzandvakil in the Mayo Clinic since April 1985, and causing Pourzandvakil and her daughter to suffer physically, financially and emotionally. Pourzandvakil twice requested that we issue a temporary restraining order. We denied both requests. *See* Order entered December 14, 1994 (Docket No. 4) and Memorandum-Decision and Order entered December 22, 1994 (Docket No. 6).

On December 27, 1994, Pourzandvakil filed an amended complaint (the "first amended complaint") (Docket No. 7) that appears to differ from the original complaint by adding British Airways as a defendant without making any allegations against British Airways. The first amended complaint also differs by requesting additional damages for prior cases and adding descriptions of several previous cases. Annexed to the first amended complaint is another document labeled amended complaint (the "annexed amended complaint") (Docket No. 7) whose factual allegations differ substantially from both the original complaint and the first amended complaint. The annexed amended complaint also adds British Airways as a party but specifies only that Pourzandvakil has travelled on that airline and that British Airways, along with other airlines on which Pourzandvakil has travelled, is aware of all the crimes committed against her.

Pourzandvakil filed yet another amended complaint on January 13, 1995 (the "second amended complaint") (Docket No. 11). The second amended complaint adds as defendants several banks, other financial institutions, insurance companies, insurance agents or brokers, attorneys and airlines as well as the Postmaster of Olmsted County and Western Union. The allegations against these defendants defy

easy summarization and will be addressed only insofar as they are relevant to the various motions.

**\*2** The Clerk of the Court has entered default against the following defendants: J.C. Penny Insurnce (*sic*) [2] ("J.C. Penney"), British Airways, Kowate (*sic*) Airline ("Kuwait"), MSi Insurnce (*sic*) ("MSI"), Judge Mork, Steven Youngquist ("Youngquist"), Prudncial Insurnce (*sic*) ("Prudential"), Ford Motor Credit ("Ford"), First Bank Rochester, and TCF Bank ("TCF"). Based on the submissions Pourzandvakil made in support of her requests for entry of default, it appears that she served these defendants by certified mail.

The court has received answers from the following defendants: Hubert H. Humphrey III, St. Peter Regional Treatment Center, and Drs. Gerald H. Gammell, William D. Erickson, and Thomas R. Stapleton (joint answer filed January 9, 1995); Olmsted County, Ray Schmitz ("Schmitz"), Susan Mundahl ("Mundahl"), C.O. Brown Agency, Inc. ("C.O. Brown") (answer to amended complaint filed January 23, 1995); George Restovich ("Restovich") (answer to complaint or amended complaint filed January 30, 1995); Norwest Corporation ("Norwest") (answer to amended complaint filed January 31, 1995, amended answer of Norwest Bank Minnesota, N.A. to amended complaint filed February 13, 1995); Travelers Insurance Company ("Travelers") (answer filed February 1, 1995); Michael Benson ("Benson") (answer filed February 6, 1995); Hirman Insurance ("Hirman") (answer filed February 6, 1995); Richard Maki ("Maki") (answer to complaint or amended complaint filed February 17, 1995); Western Union (answer filed February 21, 1995); Steven C. Youngquist ("Youngquist") (answer to complaint or amended complaint filed February 23, 1995); Kuwait (answer filed March 6, 1995); J.C. Penney (answer filed March 22, 1995); Susan E. Cooper [3] (answer to amended complaint filed March 24, 1995); and Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen and Judge Lawrence Collins (joint answer filed April 3, 1995).

The court has also received a total of ten motions from Pourzandvakil since February 27, 1995. She moved for a default judgment against defendants J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways, and TCF. She moved for immediate trial and "venue in a different place" against several defendants and also requested action according to law and criminal charges. Finally, she made motions opposing defendants' motions.

Case 1:24-cv-00668-DNH-TWD    Document 12    Filed 11/07/24    Page 54 of 60
Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)
1995 WL 316935

The court also has received a total of thirteen motions [4] from defendants. Several of the defendants moved for dismissal either under Rule 56 or Rule 12 of the Federal Rules of Civil Procedure. For instance, Commercial Union Insurance Companies ("Commercial") moved for dismissal of Pourzandvakil's complaint pursuant to Fed. R. Civ. P. 12(b) or, in the alternative, for a more definite statement. Commercial argued that Pourzandvakil's complaint against it is barred by *res judicata* and collateral estoppel and that this court does not have subject matter jurisdiction over the complaints against Commercial. American States Insurance Company ("ASI") moved for dismissal based on plaintiff's failure to state a claim upon which relief can be granted. ASI further moved for an order enjoining Pourzandvakil from further litigation against it. Maki moved for summary judgment based on lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction. Hubert H. Humphrey, III, the Judicial System of the State of Minnesota, Judge James L. Mork, St. Peter Regional Treatment Center and Drs. Gammell, Erickson and Stapleton (collectively, the "state defendants") moved for summary judgment alleging lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim on which relief can be granted, lack of subject matter jurisdiction, sovereign immunity, and, on behalf of Judge Mork and the judicial system, absolute judicial immunity. The state defendants also requested costs and attorney's fees. Travelers moved for summary judgment based on *res judicata* and/or collateral estoppel, frivolity, lack of subject matter jurisdiction, and improper venue. Travelers sought a transfer of venue to Minnesota in the alternative. Hirman moved for summary judgment based on frivolity, lack of subject matter jurisdiction, and improper venue. Hirman also sought transfer of venue in the alternative. Olmsted County, Schmitz, Mundahl, C.O. Brown and Norwest sought dismissal based on lack of personal jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. With respect to Schmitz and Mundahl, defendants sought dismissal based on absolute prosecutorial immunity, and with respect to C.O. Brown, defendants sought dismissal on *res judicata* grounds. Metmor Financial, Inc. ("Metmor") sought dismissal based on lack of personal jurisdiction, lack of subject matter jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. Finally, Restovich moved for dismissal based on lack of personal jurisdiction. [5]

**\*3** Four defendants, British Airways, Kuwait, Prudential, and Youngquist, sought vacatur of the defaults entered against

them. Prudential coupled its request with a request for an order enjoining plaintiff from filing or intervening in any litigation against it. Youngquist also requested dismissal of the complaint based on lack of personal jurisdiction and lack of subject matter jurisdiction.

ANALYSIS

The Defaults

We vacate the defaults entered in this matter because plaintiff improperly served defendants. Each application for entry of default shows service by certified mail, which is not permitted by relevant federal, New York or Minnesota rules. Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. Fed. R. Civ. P. 4(e)(2). Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. Fed. R. Civ. P. 4(e)(1). Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. Fed. R. Civ. P. 4(h)(1) and 4(e)(1). Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *See* N.Y. Civ. Prac. L. & R. §§ 308, 311 (McKinney Supp. 1995); N.Y. Bus. Corp. Law § 306 (McKinney Supp. 1995); Minn. Stat. § 543.08 (1995); Minn. R. 4.03 (1995). Finally, service on states, municipal corporations or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. Fed. R. Civ. P. 4(j)(2). Minnesota law does not authorize service on a governmental entity by certified mail. *See* Minn. R. 4.03(d) and (e) (1995).

We therefore grant the motions by British Airways, Prudential, Kuwait, and Youngquist to vacate the defaults entered against them based both on the defective service and also on the meritorious defenses discussed below. We vacate *sua sponte* the entries of default against MSI, Ford, First Bank

Case 1:24-cv-00668-DNH-TWD    Document 12    Filed 11/07/24    Page 55 of 60

Pourzandvakil v. Humphry, Not Reported in F.Supp. (1995)

1995 WL 316935

Rochester and TCF, all of whom were served improperly and preserved the service issue by raising it or declining to waive it. Concomitantly, we deny Pourzandvakil's motion for a default judgment against J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways and TCF. We vacate *sua sponte* the entry of default against J. C. Penney, which preserved the issue of service in its answer. By moving to dismiss or for summary judgment without raising the issue of service, Judge Mork may have waived the service issue. However Judge Mork objected to personal jurisdiction as inconsistent with due process and otherwise presented meritorious defenses. We therefore treat his motion for summary judgment as including a motion to vacate the entry of default and accordingly grant it.

II. The Jurisdictional Arguments

**\*4** In addition to raising various other grounds for dismissal, such as plaintiff's failure to state a claim on which relief can be granted and *res judicata,* most of the moving defendants urge (1) that this court lacks jurisdiction over either their persons or the subject matter of the controversy or (2) that this action is improperly venued. As we must, we examine jurisdiction and venue first.

A. Personal Jurisdiction

Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich and Youngquist each allege that this court cannot exercise personal jurisdiction over them consistent with due process constraints. In support of their motions, these defendants present affidavits showing that they have had no significant contacts with the state of New York relevant to this lawsuit and that their contacts with Pourzandvakil all occurred in Minnesota. Nothing in plaintiff's voluminous submissions links any of these defendants with New York. Plaintiff's extraterritorial service of process can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York State; (2) if the defendant is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to Rule 14 or Rule 19 of the Federal Rules of Civil Procedure and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. Fed. R. Civ. P. 4(k). Defendants

are not subject to federal interpleader jurisdiction and they were not joined pursuant to Rule 14 or Rule 19. In addition, no federal long-arm statute is argued as a basis for jurisdiction, and the moving defendants all would be subject to jurisdiction in Minnesota. Therefore, we must look to New York's long-arm statute to determine whether plaintiff's extraterritorial service of process could be effective under the one ground remaining pursuant to Rule 4(k). *See* N.Y. Civ. Prac. L. & R. § 302 (McKinney Supp. 1995). This rule provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain minimal contacts between the defendant and the state (such as transacting any business in the state) and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact. *Id.* §302(a). The moving defendants have demonstrated that plaintiff does not claim harm stemming from acts or contacts within the purview of Section 302(a). Therefore, we grant these defendants' motions to dismiss the complaint for lack of personal jurisdiction.

B. Subject Matter Jurisdiction

Pourzandvakil's complaint does not contain the jurisdictional allegations required by Fed. R. Civ. P. 8(a)(1). Several defendants move for dismissal based either on this pleading defect or on an affirmative claim that no subject matter jurisdiction exists. Commercial, Travelers and Hirman (collectively, the "moving insurance companies") moved for dismissal because plaintiff has not pled the complete diversity of citizenship required for subject matter jurisdiction. The state defendants, relying on *District of Columbia Court of Appeals v. Feldman,* argue that we lack subject matter jurisdiction over any issue that was determined in a state court proceeding to which plaintiff was a party. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482 (1983). These issues include plaintiff's hospitalization at St. Peter Regional Treatment Center. Finally, Metmor also moved for dismissal based on lack of subject matter jurisdiction because plaintiff has failed to plead a jurisdictional basis.

**\*5** The moving insurance companies note correctly that insofar as the claims against them can be deciphered, plaintiff states that Traveler's and Commercial did not pay for damages to Pourzandvakil's property, harassed her and cancelled her policy. Pourzandvakil does not mention Hirman in her complaint, but Hirman's attorney states that Pourzandvakil informed him in a telephone conversation that her complaint against Hirman stemmed from actions it took as an agent of

Case 1:24-cv-00668-DNH-TWD    Document 12    Filed 11/07/24    Page 56 of 60
Pourzandvakil v. Humphry, Not Reported in F.Supp. (1995)
1995 WL 316935

Travelers in denying Pourzandvakil's 1985 property damage claim.

The moving insurance companies argue that this court has no jurisdiction over the state insurance law claims absent complete diversity of citizenship between plaintiff and the defendants. 28 U.S.C. § 1332. They point out that plaintiff lists a Syracuse, New York address for herself and that Kuwait's address as listed in the complaint is also in New York. Therefore, they argue, there is no complete diversity and this court lacks subject matter jurisdiction absent a basis for pendent jurisdiction under 28 U.S.C. § 1367(a). Section 1367(a) requires a relationship between the state and federal claims so that "they form part of the same case or controversy." *Id.* Because plaintiff's claims of denial of insurance coverage bear no apparent relationship to her other claims of rape, torture, harassment and kidnapping, we do not believe that an adequate basis for supplemental jurisdiction exists. *Id.* Plaintiff's complaint therefore shows no basis for subject matter jurisdiction against the moving insurance companies, and we dismiss as against them.[6]

We also agree with the state defendants that state court decisions may render certain of plaintiff's claims against them unreviewable either because of *res judicata* or lack of subject matter jurisdiction. However, because plaintiff's claims are so generally stated and so lacking in specifics, we are unable to discern at this juncture what parts of her complaint would be outside the jurisdiction of the court. In any case, we already have determined that the state defendants are clearly entitled to dismissal on personal jurisdiction grounds. As for Metmor, we believe that plaintiff may be attempting to state a civil rights claim by alleging a conspiracy to murder in connection with a judge although she fails to articulate an actionable claim. We note that we already have determined, in any case, that Metmor is entitled to dismissal on personal jurisdiction grounds.

C. Venue

Metmor, Travelers, Maki, Hirman, Norwest, Olmsted County, C.O. Brown, Schmitz and Mundahl also allege that Pourzandvakil's action is not properly venued in this court. Although these defendants are entitled to dismissal on independent grounds, improper venue also would support dismissal as to these defendants. The general venue statute provides that a diversity action, except as otherwise provided by law, may be brought only in

(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

**\*6** 28 U.S.C. § 1391(a). Section 1391(b) provides that federal question actions, except as otherwise provided by law, may be brought only in

(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

*Id.* § 1391(b). The majority of the defendants in this action are residents of Minnesota and all of the events of which Pourzandvakil complains occurred in Minnesota. No defendant resides in the Northern District of New York, and none of the conduct plaintiff complains of occurred in this district. Therefore, venue in the Northern District of New York is clearly improper. Where venue is laid in the wrong district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id.* § 1406(a). Because, as we will explain below, Pourzandvakil's complaint not only fails to state a claim upon which relief can be granted but is also frivolous, we do not deem it to be in the interest of justice to transfer this case to another district. The purpose of the court's

Case 1:24-cv-00668-DNH-TWD    Document 12    Filed 11/07/24    Page 57 of 60
Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)
1995 WL 316935

discretionary authority to transfer rather than dismiss in cases of improperly laid venue is "to eliminate impediments to the timely disposition of cases and controversies on their merits." *Minnette v. Time Warner,* 997 F.2d 1023, 1027 (2d Cir. 1993) (holding that it was an improper exercise of discretion to dismiss rather than transfer when the statute of limitations on a timely filed complaint ran between filing and dismissal). In this case, as discussed below, a review of the complaint and the plaintiff's submissions on these motions indicates that her claims are frivolous. We therefore dismiss as to the moving defendants both on venue grounds and on the other grounds already identified as applicable. We note also that plaintiff has made claims similar to those in this action against many of the same defendants in the United States District Court for the District of Minnesota. *Pourzandvakil v. Price,* Civ. No. 4-93-207 (D.Minn. 1993). This action was dismissed by Order to Show Cause entered April 12, 1993.

III. Failure to State a Claim on Which Relief Can be Granted and Frivolity

Defendants ASI, Travelers, Hirman, Norwest, C.O. Brown, Olmsted County, Schmitz, Mundahl, Prudential, Metmor, and Youngquist as well as the state defendants have attacked the sufficiency of plaintiff's complaint. Travelers and Hirman urge that the complaint is frivolous while the remaining defendants argue only that the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). [7] We already have dismissed against all the moving parties except ASI on jurisdictional grounds and therefore have the power to address the Rule 12(b)(6) issue only on ASI's motion. *See Bell v. Hood,* 327 U.S. 678, 682-83 (1946) (subject matter jurisdiction); *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 221 (2d Cir. 1963) (personal jurisdiction). We grant ASI's motion and note in passing that were we empowered to reach the merits regarding the remaining moving defendants, we also would dismiss the complaint against them for failure to state a claim upon which relief can be granted. We also dismiss *sua sponte* as frivolous the complaint against all defendants who have not been granted dismissal previously on jurisdictional grounds.

**\*7** Pourzandvakil has not specified a statutory or constitutional basis for her claims against ASI or any of the other defendants. She alleges that certain of the insurance company defendants denied her claims for damages without alleging that the denial was in any respect wrongful. She also alleges in general terms that the defendants harassed, tortured, kidnapped and raped her and perhaps were involved

in a murder plot but does not supply (1) the dates on which these actions occurred, except to say that they began in 1984 and 1985; (2) the names of the specific defendants involved in any particular conduct; or (3) a description of any particular conduct constituting the harassment, torture or kidnapping. She suggests without further detail that ASI was involved in a plot to murder her by placing her in the Mayo Clinic. Although plaintiff does not allege specific constitutional provisions or statutes that defendants have violated, we assume -- largely because many of the defendants involved are state officials or state employees and she appears to complain of certain aspects of various trials -- that she wishes to complain of violations of her civil rights. Complaints that rely on civil rights statutes are insufficient unless "they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir. 1987). A *pro se* plaintiff's complaint must be construed liberally and should be dismissed only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (quotation omitted). Pourzandvakil has not satisfied even this minimal test; her complaint and submissions on this motion demonstrate that she cannot prove any set of facts in support of her claim which would entitle her to relief. Her complaint consists of a "litany of general conclusions" rather than "specific allegations of fact". *Barr,* 810 F.2d at 363.

Ordinarily we would allow plaintiff an opportunity to replead to state specific allegations against ASI, but three factors militate against this course of action. First, our December 22, 1994, Memorandum - Decision and Order denying plaintiff's request for a temporary restraining order indicated that she had not shown a likelihood of success on the merits of her claim because she had not pled any specific actionable facts. Despite the fact that plaintiff since has filed three amended complaints, she still fails to set forth specific actionable conduct. Second, the defendants' motions themselves have alerted plaintiff to the need to show specific actionable facts, and yet her voluminous submissions in opposition to the motions contain no specific actionable facts. Finally, plaintiff has asserted similar allegations against many of the same defendants sued in this action -- although not ASI -- as well as others in several different jurisdictions. *See Pourzandvakil v. Blackman,* [8] Civ. No. 94-C944 (D.D.C. 1994), *Pourzandvakil v. Doty* (E.D.N.Y. 1993), *Pourzandvakil v. Price,* Civ. No. 7 (D.Minn. 1993). Where the results are known to us these actions resulted in dismissals for failure to state a claim upon

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

1995 WL 316935

which relief can be granted. *Pourzandvakil v. Price,* Civ. No. 4-93-207, Order to Show Cause entered April 12, 1993; *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, Order entered April 28, 1994, *aff'd* Civ. No. 94-5139 (D.C. Cir. 1994) (per curiam). In the Minnesota case, dismissal took place after the district court offered plaintiff an opportunity to amend her pleading and plaintiff still was not able to offer specifics.[9] Even *pro se* complaints must show "some minimum level of factual support for their claims." *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, (quoting *White v. White,* 886 F. 2d 721, 724 (4th Cir. 1989)). We therefore dismiss plaintiff's complaint against ASI for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

**\*8** We note that in *Pourzandvakil v. Blackman,* Judge John H. Pratt dismissed plaintiff's *in forma pauperis* complaint *sua sponte* under 28 U.S.C. §1915(d), holding both that it failed to state a claim on which relief can be granted and that it was frivolous. We consider here whether we have the authority to dismiss *sua sponte* plaintiff's complaint, which was not filed *in forma pauperis,* as frivolous as against all non-moving defendants. The Supreme Court explicitly has acknowledged a district court's power under Section 1915(d) to dismiss as frivolous a complaint which "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). The Supreme Court explicitly declined to rule, however, on whether a district court has the authority to dismiss *sua sponte* frivolous complaints filed by non-indigent plaintiffs. *Id.* at 329 n.8. The law in this circuit is that a district court may *sua sponte* dismiss a frivolous complaint even if the plaintiff has paid the filing fee. *See Tyler v. Carter,* 151 F.R.D. 537, 540 (S.D.N.Y. 1993), *aff'd* 41 F.3d 1500 (2d Cir. 1994); *cf. Pillay v. I.N.S.,* 45 F.3d 14, 17 (2d Cir. 1995) (*per curiam*) (dismissing *sua sponte* appeal for which appellant had paid normal filing fee). We believe that *sua sponte* dismissal is appropriate and necessary here because (1) plaintiff's claims lack an arguable basis in law and fact; (2) plaintiff has repeatedly attempted to replead her claims without being able to articulate actionable conduct; (3) some of plaintiff's claims have been tested in other courts and found to be without merit; and (4) the issue of frivolity has been presented by at least some of the moving defendants.

We therefore dismiss with prejudice plaintiff's complaint as frivolous as to all defendants -- regardless of whether they have moved for dismissal -- that have not been granted dismissal on jurisdictional grounds. We direct the clerk to return plaintiff's filing fee to her. *Tyler,* 151 F.R.D. at 540.

IV. Requests for Sanctions, Costs, Attorney's Fees and Injunction Against Filing Further Actions

Because plaintiff is *pro se* and appears to have a belief in the legitimacy of her complaint, we do not believe that the purpose of Rule 11 would be served by awarding sanctions. *See Carlin v. Gold Hawk Joint Venture,* 778 F. Supp. 686, 694-695 (S.D.N.Y. 1991). Moreover, her litigiousness has not yet reached the point at which courts in this circuit have justified injunctive relief. *See id.* at 694 (and collected cases). We therefore deny the requests of ASI and Prudential for injunctive relief. Our refusal to grant sanctions and injunctive relief, however, is conditioned on this dismissal putting an end to plaintiff's attempts to sue these defendants on these claims in this forum. Any further attempts by plaintiff to revive these claims will result in our revisiting the issue of sanctions. *Id.* at 695.

CONCLUSION

**\*9** All defaults entered by the clerk are vacated. Plaintiff's complaint is dismissed in its entirety against all moving and non-moving defendants. The dismissal of the complaint against Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich, Youngquist, Commercial, Travelers and Hirman is without prejudice as it is premised on this court's lack of power either over the person of the defendant or the subject matter of the controversy. *See Voisin's Oyster House, Inc. v. Guidry,* 799 F.2d 183, 188-9 (5th Cir. 1986) (dismissal for lack of subject matter jurisdiction is not a dismissal on the merits); *John Birch Soc'y. v. National Broadcasting Co.,* 377 F.2d 194, 199 n.3 (2d Cir. 1967) (dismissal for lack of subject matter jurisdiction implies no view of merits); *Orange Theatre Corp. v. Rayherstz Amusement Corp.,* 139 F.2d 871, 875 (3d Cir.) *cert. denied,* 322 U.S. 740(1944) (dismissal for lack of personal jurisdiction is not a dismissal on the merits). The dismissals against the remaining defendants are with prejudice. All requests for sanctions and attorney's fees are denied. The requests of defendants ASI and Prudential for an injunction with respect to future litigation is denied. However, plaintiff is cautioned that any litigation in this forum attempting to revive the claims addressed herein may subject her to sanctions. Plaintiff's motions are denied as moot.

IT IS SO ORDERED.

Case 1:24-cv-00668-DNH-TWD    Document 12    Filed 11/07/24    Page 59 of 60

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)
1995 WL 316935

2     Plaintiff's spelling is idiosyncratic, and we preserve the spelling in its original form only where absolutely necessary for accuracy of the record. Otherwise we substitute the word we believe plaintiff intended for the word she actually wrote, e.g., "tortured" for "tureared."

3     Susan E. Cooper is not named as a defendant in the original complaint or any amended complaint filed with this court. From correspondence with Cooper's attorney, it appears that plaintiff sent Cooper a copy of a different version of the complaint. Because the original of this version was not filed with the court, no action against Cooper is pending in this court.

4     The court has also received three additional motions returnable May 22, 1995. The first -- from Judges Davies, Klaphake, Challeen, Collins and Chief Judge Simonett requests summary judgment dismissing the complaint based on lack of personal jurisdiction. The second by Western Union also requests summary judgment based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. The third, by British Airways, also requests dismissal based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. All three motions are mooted by this memorandum-decision and order which dismisses the complaint in its entirety against non-moving defendants for failure to state a claim on which relief can be granted.

5     The court also received an affidavit and memorandum of law in support of summary judgment from J.C. Penney. However, the documents were not accompanied by a notice of motion.

6     We ordinarily would offer plaintiff an opportunity to amend her complaint because her submissions and Kuwait's answer indicate two bases on which plaintiff might be able to argue diversity of citizenship. First, although plaintiff lists her address in Syracuse, New York, she also has indicated on the civil cover sheet that she is an Iranian Citizen and we are not aware of her residence status. As a permanent resident, she would be deemed a citizen of the state in which she resides. 28 U.S.C. § 1332(a). However, if she lacks permanent resident status, her citizenship would be considered diverse from that of all the defendants. *Id.* § 1332(a)(2). Second, Kuwait has submitted an answer in which it claims to be a foreign state within the meaning of 28 U.S.C. § 1603. If Kuwait is correct, plaintiff may have an independent basis for jurisdiction over Kuwait. *See* 28 U.S.C. § 1330. If Pourzandvakil could show subject matter jurisdiction over Kuwait without resort to diversity of citizenship, then Kuwait's residence in New York may not be relevant to the issue of whether this court has diversity jurisdiction under Section 1332. *Cf. Hiram Walker & Sons, Inc. v. Kirk Line,* 877 F.2d 1508, 1511-1512 (11th Cir. 1989), *cert. denied,* 115 S.Ct. 1362 (1995) (holding that the joinder of a non-diverse defendant sued under federal question jurisdiction did not destroy diversity as to the remaining defendant). Here, however, plaintiff's complaint is subject to so many other meritorious defenses -- including complete failure to state a cause of action -- that an amendment would be an exercise in futility. Additionally, plaintiff has not requested permission to amend, proffered an amended pleading, or indeed even supplied an affidavit stating her residency status or alleging a basis of jurisdiction over her claims against Kuwait other than diversity under 28 U.S.C. § 1332.

7     J.C. Penney also submits an affidavit requesting dismissal on this basis and others, but has not filed or served a notice of motion.

8     Former Supreme Court Justice Harry A. Blackmun.

9     We note also that plaintiff has not requested leave to amend in this action.

## All Citations

Not Reported in F.Supp., 1995 WL 316935

---

### Footnotes

---

1    Names in the caption are spelled to reflect plaintiff's complaint.

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

---